## FAIRFIELD FLORAL CO. v. BRADBURY.

### (Circuit Court, D. Maine. September 6, 1898.)

1. **POWER OF CONGRESS—POSTAL REGULATIONS—FRAUD ORDERS.**

   It seems that, if the case permitted, we ought to follow the practical result of the decision in the Sixth circuit, that congress has no power to authorize the postmaster general by a fraud order to deprive an individual citizen or a corporation of the ordinary use of the mails for legitimate purposes, though he may, under the statutes, deny them the privileges of the registered letter or money order departments. Association v. Zumstein, 15 C. C. A. 153, 67 Fed. 1000, followed.

2. **EQUITY—INJUNCTION—COMPLAINANT MUST COME WITH CLEAN HANDS.**

   A corporation complainant has no standing in a court of equity to obtain an injunction restraining a postmaster from enforcing a fraud order issued against it by the postmaster general, where the grounds alleged in its bill are that it is extensively engaged in a business which it conducts largely through the mails, and for which purpose it desires their use, and where, by the proofs, such business is shown to be one for which the postal system cannot lawfully be used under the laws of congress.

This is a suit in equity by the Fairfield Floral Company against W. J. Bradbury, postmaster at Fairfield, Me., to enjoin the enforcement of a "fraud order" issued against complainant by the postmaster general. The facts are stated in a former report of the case, on the hearing for a preliminary injunction. 87 Fed. 415.

William T. Haines and Thomas J. Boynton, for complainant.
Isaac W. Dyer, U. S. Atty., for defendant.

PUTNAM, Circuit Judge. This case is now before us on bill, answer, and proofs. Only two questions are involved: The application of the constitution to the statutes relied on by the United States, and the objection made by the respondent that the court should grant no relief, because the complainant does not come here with clean hands. The latter point was not brought particularly to our attention in connection with the motion for an interlocutory injunction.

As to the main question, the court expressed its views in an incomplete and crude manner at the conclusion of the hearing of the application for an interlocutory injunction, according to the opinion pronounced orally April 19, 1898, and reported in 87 Fed. 415. After much reflection, we have come to the conclusion that, while our individual views remain broadly as then suggested, no advantage could

come from any attempt to revise or elaborate them, because, in view of the disposition in this circuit to harmonize with the decisions of the courts of appeals in other circuits, as exhibited in Beach v. Hobbs, 82 Fed. 916, 919, and in Stud Co. v. O'Brion, according to the opinion passed down in the Massachusetts district on July 29, 1898 (93 Fed. 200), we ought to follow the practical result accomplished in the Sixth circuit, shown by the decision of the court of appeals for that circuit in Association v. Zumstein, 15 C. C. A. 153, 67 Fed. 1000, as practically interpreted by the circuit court in the same circuit in Hoover v. McChesney, 81 Fed. 472. We cannot, however, assent to the refinement made by the learned district judge, in his opinion in the latter case, that the decision of the court of appeals involved any distinction between an individual and a corporation, or that, so for as the issues here are concerned, any such distinction exists. Therefore, without regard to our own views, our conclusion on the principal question is that the complainant would be entitled to a permanent injunction as to its mail, aside from so much thereof as is registered or covers money orders, except for the objection made by the respondent that the complainant does not come here with clean hands. This defense is one to which a chancellor cannot shut his eyes when it legitimately arises and is properly presented. It is not sufficient, however, that it grows out of collateral matters; it must arise out of the very controversy before the court. This proposition may be illustrated in the present case. The order of the postmaster general on which the respondent relies interrupts, not only so much of the complainant's mail as relates to its business to which the postmaster general objected, but all of it. If, therefore, the bill was confined to those portions of the complainant's mail which do not concern the business objected to, it would not necessarily be an answer to it that the complainant was using the mail for an illegal purpose. But the bill alleges as follows:

"Your orator complains and says that it is engaged in the business of making, spraying, branching, buying, and selling artificial flowers; that, in the course of its business, it receives by mail large numbers of orders for goods and other valuable communications, and remittances of money; that it is lawfully entitled to the use of the postal system and service of the United States in carrying on its said business; that much the greater part of its business is transacted through the use, and by the means, of the said postal system and service."

Thus, the complainant expressly claims to avail itself of the mail in connection with the business which it describes, and to which the postmaster general objected; and its allegation that it is lawfully entitled to the use of the postal system in carrying on that business includes the implied allegation that the business referred to is lawful so far as such use is concerned. Therefore, by the complainant's own pleadings, the subject-matter of the lawfulness of the business, so far as relates to the use of the mail in connection with it, is directly presented to the court. Whether or not it was necessary for the complainant to make these allegations we have no occasion to determine. It is sufficient to say that the result is that, by force of the complainant's pleadings, the question whether it comes into this suit with clean hands is made a part of the controversy before the court.

The respondent takes issue as to this, by its amended answer, in the following terms:

"Said defendant denies that complainant is lawfully entitled to the use of the postal system and service of the United States in carrying on its business, and, further answering, says that he is informed and believes, and therefore avers, that the principal part of the business of the Fairfield Floral Company is the conducting a scheme or device for obtaining money through the mails by means of false and fraudulent pretenses, representations, and promises, in violation of the act of congress entitled 'An act to punish dealers and pretended dealers in counterfeit money and other fraudulent devices for using the United States mail,' approved March 2, 1889; and also an act of congress entitled 'An act to amend certain sections of the Revised Statutes relating to lotteries and other devices,' approved September 19, 1890; and also an act of congress entitled 'An act for the suppression of lotteries and other traffic through the international and interstate commerce and the postal service, subject to the jurisdiction and laws of the United States,' approved March 2, 1895; and that, in pursuance of said fraudulent scheme and device, complainant has been, and is, carrying on an extensive business through the use, and by the means, of the postal system and service of the United States."

If these allegations did not traverse the bill, and raised a new matter of defense, they clearly would not be sufficient; because then, according to well-settled rules of equity pleading, it would have been necessary for the pleader to set out the details of the alleged false and fraudulent pretenses, representations, and promises. But under the well-settled practice in the federal courts, by virtue of which the complainant must prove the allegations of his bill, unless admitted by the answer, even though the answer is inapt or deficient, there is sufficient here to advise both us and the complainant that the respondent intended to put in issue the matter which we have quoted. Therefore the court is compelled to pass on it.

We are of opinion that, as the complainant's case is now presented, it cannot lawfully use the postal system of the United States in carrying on its business, shown by the record before us. In coming to this conclusion, the court is governed by Durland v. U. S., 161 U. S. 306, 16 Sup. Ct. 508, which, after all, is only a statement of the plain intention of the statute, to the effect that it includes everything designed to "defraud," not only as the word is understood by the common law, but by any scheme by which, through artful and untruthful statements, the cupidity of various persons in the community may be unduly excited. We are not prepared to say that a careful scrutiny would precisely justify the use of every word contained in this expression; but it is, for present purposes, a substantially sufficient and correct statement of our views of the law.

It seems plain that the parties who controlled the complainant corporation at the time this bill was filed had purged the business, as before carried on, of some of its objectionable features. Nevertheless, we think that in one essential particular they have failed to place themselves beyond the reach of the statutes, and that particular is substantially shadowed out by the counsel for the respondent in the following language:

"The difficulty with the complainant's case is that it cannot hide the fact that the company (that is, the complainant) holds itself out as a legitimate

bona fide manufacturing concern, offering to give employment, when, as a matter of fact, its whole object is to sell instructions and outfits."

The court is not prepared to assent to so much of this proposition as claims that the whole object of the complainant is to sell instructions and outfits. We have no occasion to pass on that proposition. As the particular issue thus remaining involves only questions of fact, we do not deem it essential or proper to go into it at length. It is sufficient to say that in defendant's Exhibit 2 complainant makes a statement that it can handle goods profitably only in large quantities, and makes this the basis of its method of dealing with those with whom it seeks to deal. This must be taken as shadowing out what is stated elsewhere more directly, as appears in defendant's Exhibit 3, as follows: "We don't want you to sell any goods. We do that ourselves, through the wholesale stores, and by advertisements. All we want you to do is take our materials, make them into artificial flowers;" and so on. And, in order to give this practical color, the same exhibit contains a fictitious letter, with the following expression: "I see that Wannamaker's store has a big sale of artificial flowers which are just like the kind I have been making for you; so I suppose you supply them." All this suggests, as is said by the counsel for the respondent, that the complainant is a legitimate, bona fide manufacturing concern, selling its product to large dealers.

It is not entirely clear that the exhibits to which we have referred were put out or expressly accepted by the persons in control of the corporation when this bill was filed; but they were impliedly adopted by the defendant's Exhibit 10, which is proven to have been issued by the corporation after it came under the control of its present managers, and which reads as follows:

"Any women can earn $1.35 to $2.00 daily making artificial flowers. We teach you in one day, and give steady employment. We have hundreds of workers. Distance from us makes no difference. Don't delay, but send for particulars. Address: Fairfield Flower Co., Fairfield, Maine."

The statement that the company had hundreds of workers, in any sense of these words which they would carry to the common understanding, is shown not to have been true. It gives, therefore, false color and support to the assurances of steady employment, which assurances also connect themselves with, and are further supported by, what we have already referred to as parts of Exhibits 2 and 3. Thus, by a skillful manipulation of untrue statements and suggestions, a false impression of opportunities for steady employment is created, which is clearly seductive, material in its nature and consequences, and of the very essence of the matter, and therefore within the statutes as interpreted in Durland v. U. S., supra. Whether or not any one complains of fraud, or was in fact defrauded, is not important, under the statutes in question; and, by the rules of law, complainant must be charged with what it has given the public, whether its managers appreciated the effect of it or not. Consequently, we are compelled to condemn the business in question as one for which the complainant has unlawfully used, and is continuing to unlawfully use, the postal system of the United States. It follows that, until the complainant purges itself in the particular to which we have referred, as

illustrated by our references to defendant's Exhibits 2, 3, and 10, and from the results flowing therefrom, a bill of the character of this at bar cannot be maintained by it, and the complainant must be left to its remedy at law. Let there be a decree in accordance with rule 21, dismissing the bill, with costs for the respondent.