## CITY OF OWENSBORO v. OWENSBORO WATERWORKS CO.

### (Circuit Court of Appeals, Sixth Circuit. April 8, 1902.)

### No. 1,007.

1. **SUPREME COURT—APPELLATE JURISDICTION—CONSTITUTIONAL QUESTION.**
    A municipal ordinance passed under the authority of a power over the subject-matter delegated to the municipality by the legislature, at least where there is good color for the claim that it was in fact passed under delegated authority, is in effect a "law of the state," within the meaning of section 5 of the act creating the circuit courts of appeals (26 Stat. 826); and where a bill filed in a circuit court seeks to enjoin the enforcement of such an ordinance on the ground that it is in contravention of the constitution of the United States the supreme court has jurisdiction of an appeal in the case under said section.

2. **CIRCUIT COURT OF APPEALS—JURISDICTION.**
    Where the jurisdiction of a circuit court is based solely on the ground, clearly disclosed by the plaintiff's pleading, that a law of a state is claimed to be in contravention of the constitution of the United States, the parties being citizens of the same state, the supreme court has exclusive jurisdiction of an appeal in the case, and an appeal will not lie to the circuit court of appeals, although other questions may also have been involved and may have determined the decision.[1]

[1] See Courts, vol. 13, Cent. Dig. § 1099 [h, i, ii, j, p, t].

Appeal from the Circuit Court of the United States for the Western District of Kentucky.

George W. Jolly, for appellant.

W. T. Ellis and W. W. Davies, for appellee.

Before DAY and SEVERENS, Circuit Judges, and WANTY, District Judge.

SEVERENS, Circuit Judge.  The Owensboro Waterworks Company, a Kentucky corporation, filed the bill in this case in the circuit court for the purpose of restraining the city of Owensboro from putting in execution a certain ordinance, which the common council of the city had passed for the purpose of regulating the rates at which water should be supplied to the people of that city, and the collection of such rates; and also for the purpose of requiring the waterworks company to put meters into the lines of pipe supplying the water to the several consumers in certain conditions specified.  The bill sets forth the ordinances and the terms of the contract under which it was supplying water to the city and its inhabitants, the contract being one between the city and the predecessor of the waterworks company, to whose rights the waterworks company had, with the consent of the city, succeeded, and certain supplementary stipulations between the city and the waterworks company made at the time when the latter took over the contract from its predecessor.  The ordinance granting the franchise to the predecessor contained the following provisions:

"Sec. 9. The said company shall have the power and authority to make and enforce as part of the conditions upon which it will supply water to its consumers, all needful rules and regulations not inconsistent with the law, or the provisions of this ordinance.

"Sec. 10. The city will adopt and enforce all ordinances protecting the said company in the safe and unmolested exercise of these franchises, and against fraud and imposition and against injury to the hydrants rented by it to said city and against waste of water by consumers."

And the bill alleges that the waterworks company had established, and was operating under, rules and regulations pursuant to the authority of these sections of the ordinances.  Thereupon the bill proceeds to allege that on March 12, 1900, the common council of the city passed an ordinance fixing the rate at which the company should supply water to the inhabitants of the city, denying the company the right to collect the rents in advance, and requiring it to put in meters for measuring the water delivered in certain cases specifically provided for.  The bill alleges, further, that the city claims and pretends that it had rightful authority to pass this ordinance, and that it is valid, and that the city intends to enforce it.  The complainant thereupon alleges against the ordinance that it is in contravention of the grant to the company of the right to make rules and regulations; that the city has no lawful authority to fix the rates at which the company shall charge its customers; that the rates fixed by the ordinance are so low, and the requirements made so oppressive, that the company cannot conform to them and obtain any income from its investment, and, in fact, could not carry on its business without positive loss.  The insistence of the bill is that the ordinance is in violation of the con-

stitution of Kentucky, which forbids ex post facto laws and laws impairing the obligation of contracts; and it is also insisted that the ordinance is in contravention of the fifth amendment to the constitution of the United States, in that it takes private property for public use without just compensation, and also of the fourteenth amendment to the constitution of the United States, which provides that "no state shall make or enforce any law, which will abridge the privileges or immunities of the citizens of the United States, nor shall any state deprive any person of life, liberty or property without due process of law, nor deny to any person within its precincts the equal protection of the laws."

The answer admits the passage of the ordinance, and the intention of the city to enforce it; claims that it had lawful authority to pass it; denies that it is prohibited by any of the provisions of the constitutions of Kentucky or of the United States above referred to, or that it is unreasonable, or that it prevents the company from securing a fair return on its investment.

Other averments are made in the pleadings, but it is unnecessary to recite them for the present purpose. The foregoing contains the substance of the controversy. Proofs were taken, and at the hearing the circuit court decided in favor of the complainant, upon the ground that the legislature of Kentucky had not delegated to the city the power to pass such an ordinance, referring to section 3290 of the Kentucky Statutes, which contains the grant of power in respect to such subjects to municipalities of that class to which the city of Owensboro belongs. That section reads as follows:

"Sec. 3290. The common council of said city shall, within the limitations of the constitution of the state and this act, have power, by ordinance: * * * (5) To provide the city and the inhabitants thereof with water, light, power, heat and telephone service, by contract, or by works of its own, located either within or beyond the boundaries of the city. To make regulations for the management thereof, and to fix and regulate the price to private consumers and customers."

The construction adopted by the court was that the power of the city to make rules and regulations extended only to waterworks constructed and operated by itself, and the court seems to have held that the city had no other power in the premises than the power thus expressly conferred.

An appeal was taken to this court, and, prior to its being reached for hearing, the appellee moved to dismiss the appeal upon the ground that this court had no jurisdiction to entertain it, but that it should have been taken to the supreme court, because the case involved the question whether the ordinance complained of was in contravention of the constitution of the United States. Upon the submission of the motion we passed an order directing that it be postponed to the hearing on the merits, and be then heard. The case having now been fully argued, the first question with which we have to deal is that arising upon the motion to dismiss the appeal. Inasmuch as an ordinance of a municipality, if passed under the authority of a power over the subject-matter delegated to it by the legislature of a state, stands upon the footing of a legislative act for the purpose of determining whether

a right, secured by the constitution of the United States, has been infringed thereby, and such a case is upon that ground regarded as one falling within the jurisdiction of the federal courts, we see no reason to doubt that such an ordinance is to be regarded as a law of the state, within the meaning of section 5 of the act of March 3, 1891, creating the circuit court of appeals, and distributing the appellate jurisdiction. Perhaps we should add the proviso, which would apply to both the original and appellate jurisdictions, that the case be one in which there is good color for the claim that the ordinance was in fact passed under a delegated authority. But we think, without going into a discussion of the matter, that there is fair ground in the present case for contending that the common council had legislative authority for dealing with the subject to which the ordinance relates. The question is therefore whether the appeal in this case is one comprehended within the classes of cases enumerated by section 5 of the act referred to. If it is, it must be taken to the supreme court; for it is only of such cases as remain after those enumerated in section 5 have been carved out of the whole body of appellate cases that the circuit courts of appeals have jurisdiction; and as was said by Chief Justice Fuller in American Sugar Refining Co. v. City of New Orleans, 181 U. S. 277, 21 Sup. Ct 646, 45 L. Ed. 859: "Where it appears on the record, from plaintiff's own statement, in legal and logical form, such as is required by good pleading, that the suit is one which does really and substantially involve a dispute or controversy as to a right which depends on the construction or application of the constitution or some law or treaty of the United States (Water Co. v. Keyes, 96 U. S. 199, 24 L. Ed. 656; Blackburn v. Gold Min. Co., 175 U. S. 571, 20 Sup. Ct. 222, 44 L. Ed. 276; W. U. Tel. Co. v. Ann Arbor R. Co., 178 U. S. 239, 20 Sup. Ct. 867, 44 L. Ed. 1052)," such a case falls within the exclusive appellate jurisdiction of the supreme court. Looking at the language of the act, we can see no good reason for thinking that the destination of the appeal is altered by the circumstance that other questions besides those enumerated in section 5 are comprehended in the controversy which the case presents. It is still, and none the less, a case in which a question arises of the character specified in designating what cases must go by appeal or writ of error to the supreme court. The appeal or writ of error in all cases, in which no question of the character described in section 5 is involved, goes to the circuit court of appeals under the operation of section 6, which expressly bounds the appellate jurisdiction of the latter court in that way. Saving such questions as arise under the first clause of the enumeration of section 5, relating to the original jurisdiction, and the consideration of the effect of making final the judgments of the circuit courts of appeals when the jurisdiction of the circuit court depends upon diversity of citizenship by section 6 (a matter to which we shall presently recur), this makes the line of demarcation clear, and the only difficulty to be encountered in prosecuting an appeal or writ of error is in determining whether or not there is in truth a question involved in the controversy comprehended in the classes mentioned in section 5.

115 F.—21

Respecting those cases where the jurisdiction of the circuit court rests upon diversity of citizenship, it was distinctly held in Loeb v. Columbia Tp. Trustees, 179 U. S. 472, 21 Sup. Ct. 174, 45 L. Ed. 280, that it was immaterial, in determining the appellate jurisdiction of the supreme court, that the federal question did not become involved by the plaintiff's pleading, but was brought in by a claim set up in defense. That determination seems to settle the proposition that regard is to be had, not alone to the particular ground on which the trial court acquired jurisdiction, but to all the questions which arose during its progress and were determined by the judgment, and the grounds on which that decision proceeded seem unanswerable. The result was that the appeal was held properly brought to the supreme court notwithstanding the federal question had been brought into the case by the answer of the defendant. But the ground on which the original jurisdiction rested in that case was that of diversity of citizenship, and the court went on to say that the appeal might also have been taken to the circuit court of appeals. This was, as we understand, because of the peculiar provision in the sixth section of the act, that "the judgments or decrees of the circuit courts of appeals shall be final in all cases in which the jurisdiction is dependent entirely upon the opposite parties to the suit or controversy being aliens and citizens of the United States or citizens of different states." The result of this holding would seem to be that the appellate tribunal in such a case—that is, where jurisdiction has been acquired upon the ground of diverse citizenship and federal questions are also involved—is not fixed by the law, but is left to the choice of the party, carrying out in this respect the analogy of the rule applied to a question of the right to appeal arising under the first clause relating to the jurisdiction of the trial court. And the law had been so held in several previous cases. Mining Co. v. Turck, 150 U. S. 135, 14 Sup. Ct. 35, 37 L. Ed. 1030; Publishing Co. v. Monroe, 164 U. S. 105, 17 Sup. Ct. 40, 41 L. Ed. 367; Ex parte Jones, 164 U. S. 691, 17 Sup. Ct. 222, 41 L. Ed. 601. But that proposition is not here involved, because the jurisdiction of the circuit court rested entirely upon the federal question.

In the case before us the parties were both citizens of Kentucky, and the jurisdiction was invoked on account of the presence of a federal question of the class included in section 5 of the appellate act. It is true the circuit court decided the case upon another ground, but upon appeal the whole case is opened, and the appellate court will give such judgment as the case requires, and plant the judgment upon such ground as it thinks it ought to be. The question here is not affected by the circumstance that the court below made the case turn on another point.

The appellant relies upon language used by the chief justice of the supreme court in delivering the judgment in Carter v. Roberts, 177 U. S., at page 500, 20 Sup. Ct. 714, 44 L. Ed. 861, where it was said that, "when cases arise which are controlled by the construction or application of the constitution of the United States, a direct appeal lies to this court, and if such cases are carried to the circuit courts of appeals those courts may decline to take jurisdiction, or, where such

construction or application is involved with other questions, may certify the constitutional question, and afterwards proceed to judgment, or may decide the case in the first instance." But we think this language was probably intended to be modified by limitations not fully expressed, and that this inference is warranted by former decisions of the court, and by the language used by the chief justice in qualifying the foregoing expression in American Sugar Refining Co. v. City of New Orleans, 181 U. S., at page 282, 21 Sup. Ct. 646, 45 L. Ed. 859, and especially by his language in delivering the opinion of the supreme court in Huguley Mfg. Co. v. Galeton Cotton Mills (October term, 1901) 22 Sup. Ct. 452, 46 L. Ed. ——, where he said: "If the jurisdiction of the circuit court rests solely on the ground that the suit arises under the constitution, laws, or treaties of the United States, then the jurisdiction of this court is exclusive,"—because it is clear that the cases first instanced are within the exclusive jurisdiction of the supreme court. But if the original jurisdiction is founded entirely upon the ground of diversity of citizenship, and a constitutional question becomes involved, the appeal might go to either court. If it should go to the supreme court, that court would, of course, decide the whole case; if to the court of appeals, that court might also decide the whole case, or certify the constitutional question to the supreme court, and, on receiving its answer, decide the case. If it should decide the constitutional question in the first instance, the unsuccessful party might apply for the writ of certiorari under the provision of the sixth section to correct any mistake made by the court of appeals upon the subject. Thus is accomplished the whole scheme by which congress intended to give to the supreme court, by one method or another, appellate power over all constitutional questions.

We have not failed to notice that the circuit court of appeals for the Eighth circuit, departing from its own former decisions, reached a different conclusion in Pikes Peak Power Co. v. City of Colorado Springs, 44 C. C. A. 333, 105 Fed. 1, from that which we have expressed, being constrained thereto by a misapprehension of the meaning of the language above quoted from Carter v. Roberts. But we have had the advantage of the instruction afforded by the later utterances of the supreme court in regard to the interpretation which should be put upon the language employed in the Carter Case, and feel relieved from the constraint which induced the decision in the case of Pikes Peak Power Co. v. City of Colorado Springs.

In this case, for the reasons that a constitutional question was directly involved by the plaintiff's pleading and the jurisdiction of the court below was not based upon diverse citizenship, so as to give us jurisdiction of the appeal upon that ground, we are constrained to think that the exclusive jurisdiction is given to the supreme court under the fifth section of the act above mentioned, and that the appeal should be dismissed. It is so ordered.