## HARRIS v. ROSENBERGER.

### (Circuit Court of Appeals, Eighth Circuit. May 9, 1906.)

### No. 2,245.

1. COURTS—JURISDICTION—DISTRIBUTION BETWEEN SUPREME COURT AND CIRCUIT COURTS OF APPEALS—CASES INVOLVING CONSTITUTIONAL QUESTIONS.

A suit, although not one of diversity of citizenship, which, according to the complainant's bill, depends not only upon the construction and application of the Constitution of the United States and the constitutional validity of an act of Congress, but also upon the proper construction of the act of Congress, is one in respect of which the appellate jurisdiction of the Supreme Court is not exclusive, and an appeal from the final decree may be taken to the Circuit Court of Appeals. Spreckles Sugar Refining Co. v. McClain, 24 Sup. Ct. 376, 192 U. S. 397, 407, 18 L. Ed. 496, followed.

[Ed. Note.—Jurisdiction of cases involving federal questions, see notes to Bailey v. Mosher, 11 C. C. A. 308; Montana Ore Purchasing Co. v. Boston & M. C. C. S. Min. Co., 35 C. C. A. 7.

Jurisdiction of Supreme Court and of Circuit Court of Appeals, see note to Lau Ow Bew v. United States, 1 C. C. A. 5.]

2. SAME—TO GIVE RIGHT TO DIRECT APPEAL TO SUPREME COURT CONSTITUTIONAL QUESTION MUST BE REAL AND SUBSTANTIAL

Not every assertion of a right under some claimed construction or application of the Constitution, nor every claim that a pertinent act of Congress is violative of the Constitution, is efficient to establish a right to a direct appeal to the Supreme Court, under the statute distributing the appellate jurisdiction between that court and the Circuit Court of Appeals. The claim must be real and substantial, not merely colorable or without reasonable foundation.

3. SAME—CONSTITUTIONAL QUESTION CEASES TO BE REAL AND SUBSTANTIAL AFTER IT HAS BEEN SOLEMNLY AND DIRECTLY DETERMINED BY SUPREME COURT.

Whether the question of the construction or application of the Constitution, or of the constitutional validity of an act of Congress, is real and substantial, or is merely colorable and without reasonable foundation, depends, inter alia, upon whether it is an open one in the Supreme Court, or has been solemnly and directly determined by that court. If it has been so determined, it no longer constitutes a ground for a direct appeal to that court, under the statute distributing the appellate jurisdiction between it and the Circuit Courts of Appeals.

4. FRAUD—FALSE PRETENSES—PUFFING STATEMENTS OF VENDOR.

The doctrine in respect of the latitude which is accorded to a merchant in commending or puffing his goods has no application to false representations of material facts which are in their nature calculated to deceive and are made with intent to deceive.

[Ed. Note.—For cases in point, see vol. 23, Cent. Dig. Fraud, §§ 8–14.]

5. POSTOFFICE—FRAUD ORDERS—STATUTES CONSTRUED.

The provisions of sections 3929 and 4041, Rev. St. [U. S. Comp. St. 1901, pp. 2686, 2749], empowering the Postmaster General to issue so-called fraud orders as a means of stopping the use of the mails as an agency in conducting schemes or devices for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, are not restricted to schemes or devices which are wanting in all the elements of a legitimate business, or in which it is intended to return nothing whatever or nothing at all equivalent in value for the money obtained, but embrace those whereby a business, otherwise legitimate, is systematically and designedly so conducted that, by means of false representations, its patrons are induced to part with their money in the belief that they are purchasing something different from, superior to, and worth

145 F.—29

more than, what is actually being sold, although that may approximate in commercial value the price asked and received.

[Ed. Note.—Use of mails for schemes for frauds and counterfeiting, see·note to Timmons v. United States, 30 C. C. A. 86.]

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the Western District of·Missouri.

For opinion below, see 136 Fed. 1001.

A. S. Van Valkenburg, U. S. Atty., for appellant.

J. C. Rosenberger, for appellee.

Before VAN DEVANTER and HOOK, Circuit Judges, and LOCHREN, District Judge.

VAN DEVANTER, Circuit Judge. This is an appeal from an interlocutory decree enjoining the appellant, as Postmaster at Kansas City, Mo., from executing two fraud orders issued to him by the Postmaster General under sections 3929 and 4041 of the Revised Statutes, as amended by the act of September 19, 1890, c. 908, 26 Stat. 466 [U. S. Comp. St. 1901, p. 2686], and by section 4 of the act of March 2, 1895, c. 191, 28 Stat. 963 [U. S. Comp. St. 1901, p. 2749]. One of the orders reads:

"It having been made to appear to the Postmaster General, upon evidence satisfactory to him, that the Haydock Distilling Company and its officers and agents as such at Kansas City, Mo., are engaged in conducting a scheme or device for obtaining money through the mails by means of false and fraudulent pretenses, representations and promises, in violation of the act of Congress entitled 'An act to amend certain sections of the Revised Statutes relating to lotteries, and for other purposes' approved September 19, 1890: Now, therefore, by authority vested in him by said act and by the act of Congress entitled 'An act for the suppression of lottery traffic through international and interstate commerce and the postal service, subject to the jurisdiction and laws of the United States,' approved March 2, 1895, the Postmaster General hereby forbids you to pay any postal money order drawn to the order of said concern and parties, and you are hereby directed to inform the remitter of any such postal money order that payment thereof has been forbidden and that the amount thereof will be returned upon the presentation of the original order or a duplicate thereof applied for and obtained under the regulations of the department. And you are hereby instructed to return all letters, whether registered or not, and other mail matter which shall arrive at your office directed to the said concern and parties to the postmasters at the offices at which they were originally mailed, to be delivered to the senders thereof, with the word 'Fraudulent' plainly written or stamped upon the outside of such letters or matter. Provided, however, that where there is nothing to indicate who are the senders of letters not registered or other matter, you are directed in that case to send such letters and matter to the Dead Letter Office with the word 'Fraudulent' plainly written or stamped thereon, to be disposed of as other dead matter under the laws and regulations applicable thereto."

The other order is the same, save that it applies to Becker Bros. & Co., instead of the Haydock Distilling Company. These are mere trade-names adopted·and used by the appellee. He and the appellant are both citizens of the state of Missouri, and the grounds upon which the jurisdiction of the Circuit Court was invoked and upon which relief therein is sought, as is shown by the bill, are that the

statutes, under which the orders were issued by the Postmaster General, are violative of the Constitution of the United States, and that, even if valid, they do not, when rightly interpreted, comprehend or have application to the state of facts disclosed before the Postmaster General when the orders were issued. The Circuit Court, in passing the interlocutory decree, sustained the appellee's contention in respect of the interpretation of the statutes but expressed no opinion in respect of their validity. 136 Fed. 1001.

The first question which claims our attention relates to the jurisdiction of this court. Section 7 of the act of March 3, 1891, c. 517, 26 Stat. 828 [U. S. Comp. St. 1901, p. 550], which gives a right of appeal from an interlocutory decree granting or continuing an injunction or appointing a receiver, restricts it to cases "in which an appeal from a final decree may be taken under the provisions of this act to the Circuit Court of Appeals," so the question resolves itself into this: Is the case one in which an appeal from a final decree may be taken under the act of 1891 to this court? The appellee insists that it falls within the exclusive appellate jurisdiction of the Supreme Court, because it involves the construction and application of the Constitution of the United States and draws in question the constitutionality of a law of the United States. We need not refer at length to the statutory provisions or the cases which are claimed to sustain this insistence (City of Owensboro v. Owensboro Water Works Co., 53 C. C. A. 146, 115 Fed. 318; Filhiol v. Maurice, 185 U. S. 108, 110, 22 Sup. Ct. 560, 46 L. Ed. 827; Union & Planters' Bank v. Memphis, 189 U. S. 71, 73, 23 Sup. Ct. 604, 47 L. Ed. 712), because further consideration and discussion of the subject are foreclosed by the recent decision of the Supreme Court in Spreckles Sugar Refining Co. v. McClain, 192 U. S. 397, 407, 24 Sup. Ct. 376, 48 L. Ed. 496. That was a case in which diversity of citizenship did not exist, and where it was sought to recover certain moneys exacted and paid under protest as war revenue taxes the right to their recovery being asserted upon the grounds that the act of Congress imposing them was violative of the Constitution, and that, even if valid, it did not, when rightly interpreted, authorize their collection. The contention was made that the judgment of the Circuit Court was not subject to review by the Circuit Court of Appeals, but only by the Supreme Court. It was ruled otherwise. We quote from the opinion:

"Was the judgment of the Circuit Court subject to review only by this court, or was it permissible for the plaintiff to take it to the Circuit Court of Appeals? If the case, as made by the plaintiff's statement, had involved no other question than the constitutional validity of the act of 1898, or the construction or application of the Constitution of the United States, this court alone would have had jurisdiction to review the judgment of the Circuit Court. Huguley Mfg. Co. v. Galeton Cotton Mills, 184 U. S. 290, 295, 22 Sup. Ct. 452, 46 L. Ed. 546. But the case distinctly presented other questions which involved simply the construction of the act, and those questions were disposed of by the Circuit Court at the same time it determined the question of the constitutionality of the act. If the case had depended entirely on the construction of the act of Congress—its constitutionality not being drawn in question—it would not have been one of those described in the fifth section of the act of 1891, and, consequently, could not have come here directly from the Circuit Court. As, then, the

case, made by the plaintiff, involved a question other than those relating to the constitutionality of the act and to the application and construction of the Constitution, the Circuit Court of Appeals had jurisdiction to review the judgment of the Circuit Court, although, if the plaintiff had elected to bring it here directly, this court would have had jurisdiction to determine all the questions arising upon the record. The plaintiff was entitled to bring it here directly from the Circuit Court, or, at its election, to go to the Circuit Court of Appeals for a review of the whole case. Of course, the plaintiff, having elected to go to the Circuit Court of Appeals for a review of the judgment, could not thereafter, if unsuccessful in that court upon the merits, prosecute a writ of error directly from the Circuit Court to this court."

As the present case, according to the bill exhibited in the Circuit Court, involves the proper construction of the statutes under which the fraud orders were issued and is not made to depend entirely upon constitutional questions, it follows, from the decision to which we have just referred, that the case is one in respect of which the appellate jurisdiction of the Supreme Court is not exclusive, and that an appeal from the final decree may be taken to this court.

There is yet another reason why an appeal from that decree will lie to this court. Not every assertion of a right under some claimed construction or application of the Constitution, nor every claim that a pertinent act of Congress is violative of the Constitution, is efficient to establish a right to a direct appeal to the Supreme Court. The claim must be real and substantial, not merely colorable or without reasonable foundation. Millingar v. Hartupee, 6 Wall. 258, 18 L. Ed. 829; Wilson v. North Carolina, 169 U. S. 586, 595, 18 Sup. Ct. 435, 42 L. Ed. 865; McCain v. Des Moines, 174 U. S. 168, 181, 19 Sup. Ct. 644, 43 L. Ed. 936; New Orleans Water Works Co. v. Louisiana, 185 U. S. 336, 344, 22 Sup. Ct. 691, 46 L. Ed. 936; Sawyer v. Piper, 189 U. S. 154, 23 Sup. Ct. 633, 47 L. Ed. 757; Newburyport Waterworks Co. v. Newburyport, 193 U. S. 561, 576, 24 Sup. Ct. 553, 48 L. Ed. 795. In the last case it is said:

"If jurisdiction is to be determined by the mere fact that the bill alleged constitutional questions, there was, of course, jurisdiction. But that is not the sole criterion. On the contrary, it is settled that jurisdiction does not arise simply because an averment is made as to the existence of a constitutional question, if it plainly appears that such averment is not real and substantial, but is without color of merit."

Whether the question of the construction or application of the Constitution, or of the constitutional validity of an act of Congress, is real and substantial, or is merely colorable and without reasonable foundation, depends, inter alia, upon whether it is an open one in the Supreme Court, or has been solemnly and directly determined by that court. As was said by Mr. Justice Brewer, then circuit judge, in State of Kansas v. Bradley (C. C.) 26 Fed. 289:

"When a proposition has once been decided by the Supreme Court, it can no longer be said that in it there still remains a federal question. More correctly it is said there is no such question, state or federal. This is the only fair starting point for consideration of a case like this."

The question claimed to be involved in that case, and by reason of which it had been removed from the state court, was whether or not a state law absolutely prohibiting the manufacture or sale of intoxicat-

ing liquors within the state was violative of the national Constitution, and, because that question had been determined by the Supreme Court of the United States in favor of the state law, it was held that the case involved no real question under the national Constitution, was not removable, and should be remanded to the state court. The decision has been approvingly followed in many cases. Austin v. Gagan (C. C.) 39 Fed. 626, 5 L. R. A. 476; Inez Mining Co. v. Kinney (C. C.) 46 Fed. 832, 834; Bluebird Mining Co. v. Largey (C. C.) 49 Fed. 289, 291; Montana, etc., Co. v. Boston, etc., Co., 29 C. C. A. 462, 85 Fed. 867; People v. Brown's Valley District (C. C.) 119 Fed. 535, 538; State of Arkansas v. Choctaw, etc., Co. (C. C.) 134 Fed. 106; Myrtle v. Nevada C. & O. Ry. Co. (C. C.) 137 Fed. 193, 195. To the same effect are Dillon's Removal of Causes (5th Ed.) § 79, and 1 Foster's Fed. Pr. (3d Ed.) § 17.

We do not stop to here enumerate or discuss the several constitutional questions sought to be raised by the bill. Considering the manner in which this branch of the case has been presented to us, it is deemed sufficient to say that such of these questions as could originally have been said to possess any color of merit had been fully considered by the Supreme Court and by it determined adversely to the appellee's contention prior to the institution of this suit. Ex parte Jackson, 96 U. S. 727, 24 L. Ed. 877; In re Rapier, 143 U. S. 110, 12 Sup. Ct. 374, 36 L. Ed. 93; Public Clearing House v. Coyne, 194 U. S. 497, 24 Sup. Ct. 789, 48 L. Ed. 1092. In the last case it is said of the statutes under which these fraud orders were issued: "We find no difficulty in sustaining the constitutionality of these sections." In his brief, which treats other questions at considerable length, counsel for the appellee has been content to say of the constitutional questions:

"In conclusion, we call the attention of the court to the constitutional objections to this statute, raised in the bill of complaint. These objections we still insist upon. We do not believe that this court, in view of those questions, has jurisdiction to entertain this appeal, and we ask that it be dismissed."

And in oral argument there was no attempt to elaborate or enforce this insistence. We regard the constitutional questions as merely colorable and without any reasonable foundation.

Our conclusion upon the subject of jurisdiction is that the case is one in which an appeal will lie to this court from the final decree, and therefore that we may take cognizance of the appeal from the interlocutory decree.

The fraud orders complained of were issued by the Postmaster General after actual and reasonable notice to the appellee, and after he had made and submitted a written statement in his behalf in response to the notice. The state of facts disclosed before the Postmaster General, and which was substantially conceded by the appellee, was this: Under the trade-names of Haydock Distilling Company and Becker Bros. & Co., the appellee was engaged in the prosecution of a mail-order liquor business at Kansas City, Mo. By means of circulars, circular letters, order blanks and letter-heads, distributed through the mail, he represented that the Haydock Distilling Company was a distiller of fine whiskies, with a distillery at Newport, Ky., and

a distributing warehouse and office at Kansas City, Mo.; that it had been engaged in producing carefully distilled rye whisky for 30 years, possessed every natural advantage therefor, and used only selected grain; that its whisky had been sold for many years only to the largest wholesalers and jobbers, but owing to the spread of prohibition it had decided to place upon the market a nine year old whisky and to sell it direct to the consumer at a price (4 full quarts for $3, in plain boxes, express charges prepaid) that would save him the "exorbitant profits of the middleman"; that it distilled this whisky, matured it, and would ship it in its original purity, mellowed by age; that its whisky was under United States government supervision from the time of distillation until the moment of shipment to the consumer, and that it employed no salesmen, did not advertise in expensive newspapers, and was enabled to give the fullest value in ripe old whisky. Orders and remittances by mail were solicited. By like means the appellee represented that Becker Bros. & Co. were distillers of whisky, with a distillery at Cynthiana, Ky., and a distributing warehouse and office at Kansas City, Mo.; that their distillery was established in 1867 and produced only high grade rye whisky; that they had a famous whisky called "Old Storage Rye," which was 14 years old, and which they were selling direct to the consumer (4 full quarts for $3.50, in plain boxes, express charges prepaid) ; that this whisky was distilled by them in their distillery at Cynthiana, Ky., was held by them in bond until mature, and kept under government supervision until bottled; that they had no soliciting agents and were not paying commissions to any one. Orders and remittances by mail were solicited. The advertising material set forth cuts or pictures of buildings purporting to be the distilleries and warehouses in which the whiskies before named were distilled and matured, declared that a long period of maturing is essential to the production of a fine stimulant, and contained these statements:

"We will guaranty the finest satisfaction."

"If you don't receive the best and most satisfactory article that you ever obtained, return your shipment to us at our expense and we will promptly refund your money."

In truth the Haydock Distilling Company and Becker Bros. & Co., as before said, were mere trade-names adopted and used by the appellee. He had not owned or operated a distillery anywhere and did not then own or operate one, but was a "middleman,"   As he well knew, the whisky which he was selling under his trade-names was not 9 years old, or 14 years old, nor kept under government supervision until shipped to the consumer or bottled, but was comparatively new whisky purchased by him from distillers and then rectified. But, although it was not as represented and was materially inferior in quality and value to what it would have been if the representations had been true, it was perhaps of as good a grade as could be obtained in the market for the price asked and paid. Not more than half a dozen of those to whom sales had been made had complained to the appellee that the whisky did not conform to the representations, and these complaints had been adjusted by a return of the purchase price.

. The Postmaster General, being of opinion that this state of facts constituted satisfactory evidence that the Haydock Distilling Company, as also Becker Bros. & Co., were conducting a scheme or device for obtaining money through the mails by means of false representations within the meaning of the statutes, issued the fraud orders now in question. The appellee, while conceding that this action of the Postmaster General, if within the scope of his authority, is not subject to review by the courts, insists that it was beyond the scope of his authority, because in no possible view of the facts was the case covered by the statutes. Three propositions are advanced in support of this insistence: (1) The representations, although false, were permissible trade exaggerations: (2) the promise to refund the purchase price if the goods were not satisfactory and were returned, and the fulfillment of that promise in the instances where it was requested, show there was no intention to defraud; and (3) the statutes, rightly interpreted, do not embrace all schemes or devices for obtaining money through the mail by means of false representations, but only those in which it is contemplated that nothing whatever or nothing at all equivalent in value to the money obtained shall be given in return therefor.

Of the first of these propositions it is sufficient to observe that the doctrine in respect of the latitude which is accorded to a merchant in commending or puffing his goods has no application to false representations of material facts which are in their nature calculated to deceive and are made with intent to deceive, and that it was a permissible, if not a necessary, view of the facts disclosed before the Postmaster General, that some of the appellee's representations were of that character. The second proposition is not more tenable. The falsity of the representations and the appellee's knowledge of their falsity being established, as they were, it was not an inadmissible view that the promise to refund the purchase price, if the goods were not satisfactory and were returned, was cleverly devised to give apparent color and support to the representations. True, it appeared that, in a few exceptional instances where customers discovered and resented the deceit which was practiced upon them, the appellee refunded the purchase price in fulfillment of his promise, but it cannot be said that this necessarily or conclusively disproved any intent to defraud, particularly when it was not questioned that in all other instances he retained the money obtained by means of the deceit which he was practicing.

The third proposition proceeds upon the theory that sections 3929 and 4041 are to be read in connection with cognate criminal statutes (sections 3894 and 5480, as respectively amended September 19, 1890, c. 908, 26 Stat. 465, and March 2, 1889, c. 393, 25 Stat. 873 [U. S. Comp. St. 1901, pp. 2659, 3697]), and in the light of the maxim "noscitur a sociis," and that, when they are so read, the provisions therein against "conducting any other scheme or device for obtaining money or property of any kind through the mails by means of false and fraudulent pretenses, representations or promises," although broad and comprehensive, are restricted to schemes which are wanting in all the elements of a legitimate business, or in which it is intended to return nothing whatever or nothing at all equivalent in value for the

money or property obtained. And, applying this theory to the facts disclosed before the Postmaster General, it is contended that, as selling whisky is a legitimate business, and as the appellee was giving an equivalent in value for the money obtained, the case was not within the statutes, although the settled plan upon which the business was being conducted was that of obtaining orders and remittances by means of intentional and gross misrepresentations calculated to induce purchasers to believe that they were buying something different from that which was actually being sold and worth more than what they were parting with.

While not doubting that the statutes named are to be read together, we do not accede to the interpretation sought to be placed upon them. They have been frequently considered by the courts, and because of the comprehensive language in which they are expressed the efforts to narrow them by construction have not been successful. In Durland v. United States, 161 U. S. 306, 16 Sup. Ct. 508, 40 L. Ed. 709, in disposing of a contention that to make out a scheme or artifice to defraud within the meaning of section 5480 there must be a misrepresentation as to some existing fact, and not a mere promise as to the future, it was said by Mr. Justice Brewer, in speaking for the court:

"We cannot agree with counsel. The statute is broader than is claimed. Its letter shows this: 'Any scheme or artifice to defraud.' Some schemes may be promoted through mere representations and promises as to the future, yet are not the less schemes and artifices to defraud. * * * But beyond the letter of the statute is the evil sought to be remedied, which is always significant in determining the meaning. It is common knowledge that nothing is more alluring than the expectation of receiving large returns on small investments. Eagerness to take the chances of large gains lies at the foundation of all lottery schemes, and. even when the matter of chance is eliminated, any scheme or plan which holds out the prospect of receiving more than is parted with appeals to the cupidity of all. In the light of this the statute must be read, and so read it includes everything designed to defraud by representations as to the past or present, or suggestions and promises as to the future. The significant fact is the intent and purpose."

Another case arising under the same section is that of Horman v. United States, 53 C. C. A. 570, 116 Fed. 350, in which it was said by Mr. Justice Day, then circuit judge:

"The phrase 'scheme or artifice to defraud' is to be construed bearing in mind the underlying purpose of the statute to preserve the use of the mails to legitimate ends. The use of the mail by sending letters to others must be in aid of the scheme designed to defraud. What is here meant by 'to defraud'? Obviously the statute is dealing with the wrongful purpose to injure, with which the scheme or artifice must be connected. These words, in the phrase quoted, are not descriptive of the character of the artifice or scheme which has been devised, but rather of the wrongful purpose involved in devising the same, and putting it into operation by means of the mail."

The same court, speaking through Judge Richards, uses this language in O'Hara v. United States, 64 C. C. A. 81, 129 Fed. 551, which also arose under section 5480:

"The intention to make false and fraudulent representations by means of circulars and letters transmitted through the mails, and thus obtain money from the credulous, constituted the scheme itself. The objection that on its face the scheme was impossible of execution, and therefore should have de-

ceived no one, is without merit. Weeber v. U. S. (C. C.) 62 Fed., 741. Schemes to defraud depend for success not on what men can do, but upon what they may be made to believe, and the credulity of mankind remains yet unmeasured."

And in the recent case of Miller v. United States, 66 C. C. A. 399, 133 Fed. 337, it was held by this court that the schemes or artifices to defraud covered by that section are not limited to the swindling transactions specifically described therein, nor to those of a similar character, but embrace the intentional use of a legal contract or transaction for the purpose of defrauding another, although the use of the same contract or transaction with an honest intent to accomplish a laudable object would be lawful and innocent.

The case of Missouri Drug Company v. Wyman (C. C.) 129 Fed. 623, like that now before us, was one in which it was sought to enjoin the execution of a fraud order issued under sections 3929 and 4041. The complainant was engaged in selling medicines, which was in itself a legitimate business, but to create a demand for and to induce the purchase of one of its medicines, called "Vitality Pills," it was intentionally and grossly misrepresenting their ingredients and curative properties. But, although the pills had some medicinal value, in that they were compounded in part of old and well-known drugs possessing tonic properties, it was held by Judge Thayer that the case came within the scope of the Postmaster General's authority, and an injunction was refused.

Another case somewhat like that last cited is Fairfield Floral Company v. Bradbury (C. C.) 89 Fed. 393. The complainant was engaged in selling instructions and materials for making artificial flowers, which was in itself a legitimate business, but, to create a demand for and to induce the purchase of its instructions and materials, it was falsely representing that it was prepared to give steady employment to the purchasers by taking the flowers which they would make and selling them through wholesale stores. The fraud order was permitted to stand, it being held by Judge Putnam that sections 3929 and 4041 include any scheme by which, through artful and untruthful statements, the cupidity of various persons in the community may be unduly excited and money or property obtained from them.

While the arrangement of the several parts of sections 3929 and 4041 and the use of the word "other" in the part relating to schemes* or devices for obtaining money or property by means of false or fraudulent pretenses, representations, or promises may seem to give some color to the appellee's contention, an examination of the other sections, with which they are conceded to be in pari materia, shows that no importance is to be attached to the matters mentioned. Thus, while sections 3929 and 4041 deal first with other objectionable enterprises and then with schemes or devices for obtaining money or property by false pretenses, section 5480 deals first with schemes or artifices to defraud; and, while sections 3929 and 4041. after mentioning lotteries, gift concerts, and similar enterprises, are directed against any "other" scheme or device for obtaining money or property by false pretenses, section 3894 in its second part is directed

against "schemes devised for the purpose of obtaining money or property under false pretenses," the word "other" not being used, and section 5480, as before seen, is directed against "any scheme or artifice to defraud."

Our conclusion is that when a business, even if otherwise legitimate, is systematically and designedly conducted upon the plan of inducing its patrons, by means of false representations, to part with their money in the belief that they are purchasing something different from, superior to, and worth more than, what is actually being sold, it becomes an objectionable scheme or device within the intendment of sections 3929 and 4041, although what is being sold may approximate in commercial value the price asked and received. The difference between such a scheme or device and those where nothing whatever or nothing at all equivalent in value is intended to be returned for the money obtained is one of degree only, but not of principle. Both are grounded in deceit, operate injuriously upon the public, and constitute the obtaining of money by means of false pretenses. A purchaser is entitled to receive what he is induced by the vendor's representations to believe he is ordering and paying for, and not something which he does not order and may not want at any price.

The decision of the Circuit Court of Appeals of the Seventh Circuit, in O'Neil v. United States, 56 C. C. A. 584, 120 Fed. 236, which is relied upon by the appellee, is not in point. That was a prosecution under section 5480, and because the proof failed to sustain the charge in respect of an essential part of the scheme or artifice to defraud, as specifically set forth in the indictment, the judgment of conviction was reversed, but the court, speaking through Judge Grosscup, was careful to say of a question like that presented in the case before us: "The question thus mooted would be interesting, if it were fairly involved in this case. But it is not."

As the Postmaster General appears to have acted within the scope of his authority in issuing the orders of which complaint is made, the interlocutory decree granting an injunction against their execution by the appellant is reversed.