# SIMEON K. MINER

*v.*

# LUDWIG PHILLIPS.

| 42 | 123 |
| 30a | 297 |
| 42 | 123 |
| 137 | 268 |
| 42 | 123 |
| 147 | 368 |
| 42 | 123 |
| 77a | 199 |
| 42 | 123 |
| 81a | 142 |
| 42 | 123 |
| 82a | 310 |
| 42 | 123 |
| 90a | ¹590 |
| 42 | 123 |
| 104a | ⁵ 94 |

1. BILL OF EXCEPTIONS — *its requisites — presumption in support of a verdict.* Where a bill of exceptions fails to state that it contains all the evidence in the case, the appellate court will not examine whether the evidence it does contain is sufficient to support the verdict, but the presumption will be indulged that it was authorized by the proof.

2. INSTRUCTIONS — *when the propriety of giving them will not be inquired into.* So, where the propriety of giving certain instructions depends upon the character of the proof in the case, and the record does not show that it contains ·all the evidence, the instructions will not be considered, on error.

3. EVIDENCE — *declarations of a vendor after the sale.* The declarations or admissions of a vendor, after his sale of property, are not admissible to defeat his vendee's title.

4. IMPEACHMENT *of a witness by contradicting his testimony — of the proper foundation therefor.* When a witness is interrogated in reference to what statements he has made to other persons, with a view to impeach him by contradicting his testimony in that regard, his attention should be directed to the particular statements of which he is desired to speak, by proper reference to time and place.

5. EVIDENCE — *of proving a fact by the use of general terms.* On the trial of a question of the fraud or good faith of a party in making a transfer of his property, it is not improper, in his examination as a witness, to ask him, in general terms, if he made the transfer in good faith, and he may answer, in the same general terms, that it was made in good faith, without stating the particular terms of the sale.

6. It is a correct practice to ask general questions of this character, leaving the opposite party, upon cross-examination, to call for details and the collateral circumstances of the transaction, if he desires them.

7. EXCEPTIONS — *when necessary.* Where no exception is taken on the trial, to a reference made by a witness in his answer to a question, the objectionable parts of his answer cannot be alleged against him on error.

8. EVIDENCE — *refreshing a witness' recollection, or fixing a point of time.* Where a witness is asked at what time a certain event transpired, as when a sale was made, it is proper to permit him to refer to a notice published in a newspaper concerning the matter, by way of refreshing his memory as to the time of the occurrence.

9. FRAUD — *what is evidence of fraud.* In a contest between an attaching creditor and a vendee of the debtor, in which the good faith of the sale is in

question, it is not allowable for the party alleging fraud to prove that other creditors of the vendor had sued out attachments on hearing of the sale, for the purpose of proving that the sale was fraudulent, because such fact is not evidence of fraud.

APPEAL from the Circuit Court of Jo Daviess county; the Hon. BENJAMIN R. SHELDON, Judge, presiding.

This was an action of replevin brought in the court below by Ludwig Phillips against Simeon K. Miner, to recover a quantity of dry goods.

The defendant pleaded *non cepit, non detinet,* and a special plea, that the defendant was sheriff at the time of the taking, and seized said goods by virtue of a writ of attachment issuing out of the Circuit Court of Jo Daviess county, Illinois, wherein one Frederick Lewis was plaintiff and Joseph Horwitz was defendant; that judgment was recovered in said attachment suit and a writ of special *fieri facias* was issued thereon commanding appellant to make the sum therein mentioned out of said goods, and that said goods and merchandise at the time of the taking were the goods of Joseph Horwitz and liable to seizure. A fourth plea was filed, alleging property in Horwitz. Upon these pleas issues were formed. Three trials have been had in the court below, the first resulting in favor of the defendant, and the second and third in favor of the plaintiff. From the judgment rendered on the last trial the defendant took this appeal.

The bill of exceptions fails to state that it contains all the evidence given upon the trial, but it seems the plaintiff claims to have purchased the goods in controversy from Horwitz, and the defendant insists the sale by Horwitz to the plaintiff was fraudulent, as to the creditors of Horwitz, and therefore the goods were subject to seizure under the writ of attachment mentioned in the third plea.

On the trial the plaintiff introduced in evidence the deposition of John Horwitz, who appeared to be the person who sold the goods to the plaintiff. Among other questions, this witness was asked by the plaintiff, whether his sale to the plaintiff

was made in good faith. The defendant objected to the question, but the court allowed the witness to answer it, when he said it was made in good faith.

In the deposition of one Mayberg, taken on behalf of the defendant, the witness is asked to state the circumstances connected with the sale by Horwitz to Phillips. He answered that Horwitz made a pretended sale of the goods to Phillips; that he talked to Horwitz about it, asked him how he came to transfer his stock to Phillips, a man without means and of not good reputation. Horwitz replied to the witness, that he was afraid his creditors would come on, and he sold out ; that Phillips had paid him nothing, but expected some money from Europe. These statements of Horwitz, made after his sale to the plaintiff, were, on motion of the latter, excluded from the jury, and the defendant excepted.

On the cross-examination of Horwitz, who was introduced by the plaintiff, the defendant asked the witness whether he did not tell Hellman that he sold out to avoid being troubled by his creditors, to which the witness answered, that he had not seen Hellman since he sold out. The object of this question was to lay the foundation for contradicting the witness by other testimony, and thereby impeach him.

An objection is made to the statement of a witness, J. P. Bohanon, in regard to a notice he saw in a newspaper. The deposition of this witness was taken on behalf of the plaintiff, and the force of the objection will be seen by reference to a portion of the testimony of the witness, which is as follows :

Q. Do you know the parties in this suit, or either and which of them ; and how long have you known them respectively ? A. I know Phillips ; he was here in the spring of 1861 ; I was acquainted with him before that, but cannot state how long. I have no acquaintance with the defendant.

Q. State what business he was engaged in when you knew him, and where ? A. He did not seem to be engaged in business when I first knew him, he came to Anna, apparently on a visit ; he seemed to be a man of leisure ; saw him spend a good deal of his time about the streets.

Q. State if you know of his being engaged in business at Anna; and if so, what kind of business, and how long? A. He was selling goods there, as I understood it, as to the length of time, I cannot say for certain; (it seems to me from my best recollection, from the time I saw the notice in the Union County *Record*, it was two or three weeks; I saw a notice of the change of ownership in the Union County *Record*, a paper published in this county.)

Q. State, if you know, whom Phillips purchased said goods of, or who was in possession of them prior to the time referred to in your last answer? A. Prior to that time John Horwitz was in possession of them; as to the purchase, I know nothing only from what the parties told me and what I saw in the paper.

Q. State, if you know, where John Horwitz was after you saw the notice in the paper, and what business he was engaged in during the two or three weeks referred to above? A. John Horwitz was there a part of the time; he went off somewhere, I know not where; I do not know what he was doing. It seems to me that during that time there were some hides lying there; whether he shipped them or not, I do not recollect.

Q. How far do you reside from the store occupied by Phillips; and what business were you engaged in at that time? A. My business place was about 125 yards from the store that Phillips was in; I was acting as justice of the peace, and selling goods.

Q. State, if you did any business in the way of collecting for Phillips, if so, state what accounts? A. My recollection is that John Horwitz commenced a suit against Peter Simmerman, and Horwitz directed me when the money was collected to pay it to Phillips; I think they finally compromised, and Horwitz or Phillips got the money; I don't recollect which; I was owing Horwitz a little and he directed me to pay it to old man Phillips; that was after I had understood that Horwitz had sold out to Phillips.

Q. Do you know of Phillips acting as clerk for Horwitz at any time before he sold out to him? A. I have seen Phillips there; I do not know that he was clerking; I saw him behind

the counter; he seemed to be somewhat related or an acquaintance of Horwitz.

Q. How long before you saw the article in the paper was it that you saw Phillips behind the counter? A. I could not say whether it was before or after.

Q. State whether you were frequently in the store while John Horwitz was doing business; and if he had any clerks, state who they were. A. I was there a few times. Mr. Brisbin was a clerk there a while. I don't know whether for John or Harry — don't know what the style of the firm was. When Harry was in it, there was a Dutchman there who was some kind of an outside clerk.

Q. What has become of the Union County *Record?* A. The last I heard of its editor, he went to Minnesota.

Q. Have you made a search for a copy of the paper containing a notice referred to in your former answer? A. I have, but did not find it.

Q. Will you state the substance of that article as near as you can? A. The notice was in the usual form where parties give notice that they have sold out; and also authorized Phillips to settle the accounts.

Q. State what became of the stock of goods after Phillips had been in possession two or three weeks. A. The goods were attached by some one, — I don't remember his name, — and the sheriff sold them, I think during the time Phillips was there. I saw some boxes said to contain goods, about the store door, with some skins.

Q. How long before the goods were attached, did you see the boxes? A. I could not say exactly; to the best of my recollection it was a few days before.

No objection was taken to this evidence in the court below.

On the trial, the defendant read the deposition of *Benedict Frenkel.* His testimony, in part, is as follows:

Q. Do you know the parties in this suit, or either and which of them; and how long have you known them respectively; and do you know Joseph Horwitz; and when, where and how long? A. I am not acquainted with the parties in this suit; I know

Phillips by reputation; I am acquainted with Joseph Horwitz—have known him since March, 1860, at Cincinnati; I have known him since that time, as he came to Cincinnati to buy goods; he kept store in Anna, Illinois.

Q. State if you know the circumstances attending a pretended sale of merchandise by Horwitz to Phillips; when and where did it occur; was any consideration paid; what became of the merchandise sold; and also state whether Phillips is, or was at the time of said pretended sale, personally responsible for any sum? A. Phillips was clerk for Horwitz at Anna, and pretended to buy him out about a year ago; there was no consideration paid to my knowledge; what was left at Anna in the hands of Phillips was attached by our firm and Frenkel & Co., for a debt of Horwitz, and the goods sold by sheriff, and proceeds paid to us. Other parts of the stock were shipped by Horwitz to different places, and were in those places attached by other creditors; he had no reputation for responsibility, had been a clerk and never pretended to have any money.

Q. State if Horwitz was indebted to you at the time of said pretended sale, and whether in following up your claim against Horwitz you learned any thing of the transactions or sale between Horwitz and Phillips tending to show fraud? A. Horwitz was indebted to our firm and Frenkel & Co., in seventeen or eighteen hundred dollars; we attached Horwitz's stock which was at Anna, Illinois; he was indebted to Aub, Frenkel & Co., at the time of the pretended sale, in $1,739$\frac{2}{100}$; we learned that he had made a pretended sale to Phillips, and attached the stock in the hands of Phillips at Anna, and some eighty dollars in the drawer, sustained the attachment and made thereon clear $1,000. Phillips litigated the claim in two courts. We could not believe that was all the stock of Horwitz, and discovered that he had shipped goods to other places which were attached by other creditors.

The statements of the witness in relation to suing out an attachment against Horwitz and levying the same on the goods in controversy, were excluded, on motion of the plaintiff, and the defendant excepted.

This partial statement of the case will present the questions decided by the court.

Messrs. LELAND & BLANCHARD and Mr. E. A. SMALL, for the appellant.

Mr. L. SHISSLER, Mr. M. Y. JOHNSON and Mr. W. E. IVES, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

The grounds relied upon for a reversal in this case are, the admission of improper, and the rejection of proper, evidence; that the finding of the jury is not sustained by the testimony; and overruling the motion for a new trial. This was the third trial in the court below, the first of which resulted in favor ↳ appellant and the other two in favor of appellee. The transcript fails to show that it contains all of the evidence on the trial in the court below. The practice is long and well settled in this court, that, where a bill of exceptions fails to show that it contains all the evidence in the case, this court will not examine whether the evidence it does contain supports the verdict. It is for the reason, the presumption will be indulged, that there was other proof, and that it was sufficient to sustain the finding. On error, it is for the plaintiff to overcome the presumption that the judgment of the court below is correct. He must show error that vitiates the judgment, or he must fail.

We cannot, for the same reason, review the decision of the court refusing to grant a new trial. The judge who tried the case, having heard all of the evidence, is presumed to have decided the motion in view of all the proof adduced on the trial, and it must be presumed that his decision is correct, until error is shown. The bill of exceptions not stating that it contains all of the evidence, we cannot disturb the verdict on the evidence it does contain, even if it was insufficient. Nor can we perceive any error in giving the instructions. They should always be given

in reference to the evidence in the case.   On one state of facts as disclosed by the testimony, an instruction would be strictly proper, while on another state of facts it would be improper, as calculated to mislead the jury.   It is, therefore, unnecessary to consider the instructions unless we had all the evidence before us upon which they were based.   We cannot perceive from this record that the court below erred in overruling the motion for a new trial.

The declarations of Horwitz, made after the sale, were properly excluded.   It has been repeatedly determined by this court, and in accordance with the well established rules of evidence, that the declarations or admissions of the vendor, after he has sold the property, cannot be received to defeat the vendee's title.   And it is for the obvious reason that there is then no privity existing as to the parties or the title.   His declarations, made after the sale, in reference to the property or the sale, are no more binding upon the vendee than are those of any stranger to the transaction.   After the sale was consummated, the vendor became a stranger to the title for all purposes, and his statements then made, in reference to the intentions of the parties in making the sale, are not evidence against the vendee, and the court below did right in excluding them from the jury.

The record in this case fails to show, that the proper foundation was laid to impeach John Horwitz, by contradicting his evidence.   The question propounded to him was, whether he told Hellman that he had sold out to avoid trouble with his creditors.   There was neither time nor place named, or any other circumstance referred to, calculated to direct the attention of the witness to the conversation about which the inquiry is made. Until this was done, the law will not permit a witness to be contradicted.   This would be permitting a witness to be entrapped, when the law requires that he should be treated fairly. If, after his attention has been particularly called to the conversation, in which the statement is supposed to have been made, and the witness denies making the statement, then he may be contradicted.   This was not done, and the court decided correctly in not permitting Hellman to answer the question.

It is urged that the court below permitted Horwitz to answer, that the sale was made in good faith, without stating the particular terms of the sale. No objection is perceived to the question or the answer. If desired, the opposite party had the right, on cross-examination, to ascertain all the particulars of the transaction, and thus show, if he could, that the sale was fraudulent. This is the usual practice, and we cannot perceive that it can work any hardship. It is generally recognized as correct practice to ask general questions of this character, leaving the other side to call for details and the collateral circumstances of the transaction.

There was no exception taken to what the witness said in reference to the notice published in the newspaper. That being the case, error cannot be assigned on the admission of that evidence. But, it seems, the witness only referred to the fact of seeing the notice, for the purpose of fixing a date. He was asked if he knew of Phillips being engaged in business, and the length of time. In answering the question, to fix the period and to refresh his memory, he referred to the notice in the newspaper. The answer does not seem to contain any thing prejudicial to the opposite party. The witness had the right to refresh his memory by referring to this or any other paper, and he did so in this case to ascertain the length of time Phillips had been in business. There was no error in permitting the witness to answer the question in the manner he did.

The fact, that other creditors had sued out attachments, is not evidence of fraud. To so hold, would enable creditors, in any case, to defeat the fairest transaction, and a sale made in the utmost good faith. It would only be necessary for one creditor to sue out an attachment, and for other creditors to prove that fact, to establish a fraud that would impeach the fairest sale that could be made. This is not the law. It is impossible, that strangers to the transaction can do any act that can in the least affect the purchaser's rights after he has *bona fide* acquired title to the property. Inasmuch as such proof is inadmissible to prove fraud, it makes no difference whether the offer was made to prove it by oral or record evi-

dence, as in either case it should be rejected. The mode of proof could not affect the right.

We are unable to perceive any error in this case requiring the reversal of the judgment of the court below, and it must therefore be affirmed.

*Judgment affirmed.*