HARRY E. ROSS, et al., vs. MAINE CENTRAL RAILROAD COMPANY.

Penobscot.   Opinion December 28, 1915.

*Bills of Lading.   Carmack Amendment.   Common Carrier.   Contract of Affreightment.   Special.   Contract for Heating the Cars. Initial Carrier.*

Action of assumpsit against the defendant for damages to three car loads of potatoes, caused by freezing.

*Held:*

1. The receipts for heater charges constituted a new, and additional contract to the general contract of affreightment, based upon an additional consideration, and involving additional duties upon the part of the defendant, which having been assumed, remained liabilities not only while the shipment was in its possession, but while it was in the possession of the connecting carrier. That an intermediate carrier may make and be bound by a contract for special service aside from the general contract of affreightment, as in this case, is well settled.

2. In making the contract for transportation, the means and terms used are uniformly selected by the carrier and not by the shipper. Any special contract is ordinarily written on a printed blank prepared by the company to serve the purpose of a receipt. It is construed strictly against the company.

3. The parties were competent to make the contract for heating the cars. The receipt of the extra charges for heating and issuing the receipt therefor by the company, is prima facie evidence that the goods were in good order and in case of damage from freezing the burden of proof was upon the defendant to show that damage arose from some cause for which it was not responsible.

4. Where there are several connecting carriers, the question whether the liability of the first carrier extends beyond its own line depends upon the inquiry whether it in any form assumed or held itself out to the public as assuming any responsibility beyond the terminus of its own route. By holding itself out as a carrier in this respect, an initial carrier may assume a legal obligation to receive and carry goods beyond its own line, although it does not have any actual arrangement with the connecting lines. Its liability therefor depends upon the existence of a contract either express or implied, and the implied contract may be shown by direct or circumstantial evidence.

5. It is immaterial in this case, who owned the cars, or what kind of cars happened to be in use in the circumstances. The contract was to heat the cars in question and it was made by the defendant in its own name. There was no agency disclosed or pleaded. The blanks used were in general use by the defendant and there is nothing in the contract or on the forms used to indicate agency for any other company. It must be regarded as the contract of the defendant. The jury found that there was a breach of that contract. That the defendant is liable for such breach is well settled.

On motion and exceptions by defendant. Motion and exceptions overruled.

This is an action brought by the plaintiffs, Harry E. Ross and H. Eugene Collett against the Maine Central Railroad Company to recover the value of three car loads of potatoes shipped by the plaintiffs from Bangor, Maine, over the line of the Maine Central and connecting carriers to Hoboken, New Jersey, the potatoes having frozen enroute. Plea, general issue. During the course of the trial exceptions were taken by defendant to the admission and the exclusion of evidence, and also to the charge of the presiding Justice. The jury returned a verdict for plaintiff, and defendant filed a motion for a new trial. The exceptions of defendant are all considered in the opinion.

The case is stated in the opinion.

*Terence B. Towle, and Charles J. Hutchings,* for plaintiffs.

*Fellows & Fellows,* for defendant.

SITTING: SAVAGE, C. J., SPEAR, BIRD, HALEY, HANSON, JJ.

HANSON, J. Action of assumpsit against the defendant for damages to three car loads of potatoes, caused by freezing. The potatoes were shipped from East Corinth and Charleston over the Bangor Railway and Electric Company's line to Bangor, consigned to the plaintiff, and the cars were then turned over to the defendant which issued its bills of lading from that point over its own and connecting roads to their destination at Hoboken, New Jersey.

In addition to the general contract of affreightment, the plaintiff and defendant entered into another and special contract, in which for a consideration to be paid therefor by the plaintiff, the defendant agreed to heat the cars in question on their passage from Bangor to Hoboken, and upon the last named contract this suit was brought. The case was heard before as in 112 Maine, 63. On the first hearing a nonsuit was ordered. In the second trial the jury returned a verdict for the plaintiff for $1,114.91, and the case is now before the court on the defendant's exceptions to the admission of certain testimony offered by the plaintiff, to the exclusion of two questions in cross examination by the defendant's counsel, to the charge of the presiding Justice, and the refusal to instruct except as given in the charge. The same line of defence was adopted as in the first case, that the defendant was not the initial carrier and therefore not liable under the Carmack Amendment to the Interstate Commerce Act of February 24, 1887, and further because the defendant was acting as the agent of the Eastman Heater Car Company. Certain new evidence was introduced, its purpose being to establish the claim that the Bangor Railway and Electric Company is engaged in interstate business, and in this case was the initial carrier. Inasmuch as the former case holds that as to the contract of affreightment that railroad was an interstate carrier as well as the initial carrier, such new evidence is not material in the present consideration of the case.

Exceptions No. 1 and 3 and the requested instructions 1 to 6 inclusive relate entirely to the claims asserted under the provisions of the Carmack Amendment. The rights and liabilities of the parties in respect to such claim having been determined in the former case the defendant can take nothing by these exceptions. In Exception

No. 2, the defendant opposed the admission of the plaintiff's testimony that he received the potatoes at Bangor and billed the same from Bangor to Hoboken. The objection related to the alleged incompetency and irrelevancy of the testimony. It is manifest that if the contention is true, the defendant could not be prejudiced by the ruling, for the same information was before the jury in the several bills of lading and other evidence in the case, and therefore, but cumulative at best.

Exceptions No. 4 to 8 inclusive relate to the admission of testimony: 1. As to the meaning of heater charges; 2. The market price of potatoes at Bangor on the days of shipment; 3. The condition and value of the potatoes in Hoboken; 4. The meaning of the term "lighterage free" and the exact point of delivery by its local designation as "Palmers dock."

The reasons for the objection stated are the same as in the foregoing,—that such testimony was incompetent and irrelevant. We fail to see where the defendant is prejudiced by the admission of the testimony objected to, but whether prejudiced or not the testimony was admissible under well known rules. These exceptions are, therefore, overruled.

The measure of damages in cases where the shipment is made in performance of a special contract, known to the carrier will be the difference between the contract price at destination and market value at the place of shipment, less the freight. 6 Cyc., 526. Whether the loss occurred on the Bangor Railway and Electric Company's line or on the defendant's road was a jury question.

In *New York & B. Transp. Line et al.* v. *Baer & Co.*, 84 Atl., 251, where in an action for loss of wool in transit neither of the defendants was the initial carrier, and one of the defendants was not the terminal carrier in any of the shipments, it was held that "their liability could not be predicated on the Carmack Amendment, and they are subject only to the liability imposed by the common law."

The last named case emphasizes the rule that each road, confining itself to its common law liability, is only bound, in the absence of special contract, to safely carry over its own road and safely deliver to the next connecting carrier." And this is true as to an intermediate carrier that accepts property for carriage directed to a place beyond the terminus of its route.

Where it is shown that the goods were delivered to the initial carrier in good condition, and they are subsequently delivered to the consignee by the connecting and terminal carrier in bad condition, the presumption of law is, when such last named carrier is made defendant, that the goods were received by such defendant in the same condition that they were delivered to the initial carrier and the burden is upon the defendant carrier of proving that such goods came to its possession in damaged condition. And it is proper to show knowledge by the parties to a written contract for transportation of goods, of the circumstances on the basis of which it was made, for the purpose of showing what was within the contemplation of the parties in making the contract, where such knowledge is material in fixing the damages. 4 R. C. L., 913, *Weston v. B. & Me. R. R. Co.,* 190 Mass., 298.

Exception No. 10, relates to one of the alleged rules of the Eastman Car Company. Testimony as to such rules was excluded because the same question had been asked by counsel the day before, and answered to the satisfaction of counsel. The objection cannot be sustained. The admission or refusal to admit the testimony was within the discretion of the presiding Justice, and his ruling thereon is not open to exception.

As to the charge of the presiding Justice. The defendant objected to that part of the charge where it is stated: 1. "That the damages must be computed as of Bangor, and that the place of shipment, so far as the question of the determination of damages is concerned, was Bangor;" and 2. "That by accepting the heater charges the defendant undertook that these cars should be properly heated in their transit from Bangor to their destination."

The defendant can take nothing by these exceptions. The language used was substantially but a repetition of the words used by the defendant in its own bills of lading, and contract to heat the cars, and it does not appear nor is it urged in argument that the defendant was aggrieved by the charge in this respect.

There remains to be considered but one item from the number of requested instructions, viz: No. 7, which reads, "If the plaintiffs, or either of the plaintiffs, knew that the Maine Central Railroad Company was acting as agent for the Eastman Car Company, when it accepted the heater charges, then the plaintiffs cannot recover."

We think the objection without merit for the reason that the request was too broad in its scope, and was not warranted by the pleadings or any evidence in the case on either side. It was not confined to this case. The defendant may have been the agent of the Eastman Car Company, but it did not disclose its agency, and the case is barren of testimony tending to show agency, general or special, or the nature and terms of any contract subsisting between the defendant and the Eastman Car Company, or the actual ownership of the cars used in the transportation of the potatoes, but it is shown that two of the three cars were Maine Central Eastman Heater Cars. While it may be true that there is or was a relation of principal and agent subsisting between the defendant and the Eastman Heater Car Company, such relation does not appear from the testimony in this case. If important to the defendant, production of testimony to show agency if intended to be pleaded as a defence, which was not done, was within its power, and necessarily not a matter over which the plaintiff had control. Such testimony was not offered. If not true, and the plaintiffs could not be expected to know the terms of the business relations of the two corporations, then to hold them responsible for knowledge of such relation from information which at best is merely hearsay, would be repugnant to familiar rules of evidence and sound public policy as well. There was no evidence in the case to justify such instruction. The receipts for heater charges constituted a new and additional contract to the general contract of affreightment based upon an additional consideration, and involving additional duties upon the part of the defendant, which having been assumed, remained liabilities not only while the shipment was in its possession but while it was in the possession of the connecting carrier. That an intermediate carrier may make and be bound by a contract for special service aside from the general contract of affreightment, as in this case, is well settled. Recognition of this rule is so general that courts in asserting the principle contended for by the defendant invariably reserve from its inclusion cases where there is a special contract.

A carrier receiving a shipment of goods for transportation over its own line and for delivery to a connecting line for carriage thereon is bound, in the absence of special contract, only on its common

law liability to safely carry over its own road and safely deliver to the connecting carrier. *N. Y. & B. Transp. Line et al.,* v. *Baer & Co.,* 84 Atl., 251; *Perkins* v. *Portland R. R. Co.,* 47 Maine, 573; *Skinner* v. *Hall,* 60 Maine, 477.

In making the contract for transportation the means and terms used are uniformly selected by the carrier and not by the shipper. Any special contract is ordinarily written on a printed blank prepared by the company to serve the purpose of a receipt. It is construed strictly against the company. Baldwin American Railroad Law, 347. The general proposition, that the bill of lading is prima facie evidence of the facts recited therein is maintained by numerous cases. Redfield, Vol. 2, page 167, 4th Ed., citing *Obrien* v. *Gilchrist,* 34 Maine, 554; *Tarbox* v. *Eastern Steamboat Co.,* 50 Maine, 339.

The parties were competent to make the contract for heating the cars. The receipt of the extra charges for heating and issuing the receipt therefor by the company, is prima facie evidence that the goods were in good order and in case of damage from freezing the burden of proof was upon the defendant to show that damage arose from some cause for which it was not responsible. *Tarbox* v. *Eastern Steamboat Co.,* supra.; *Dow* v. *Portland Steam Packet Co.,* 84 Maine, 490; *Little* v. *Boston, etc. R. Co.,* 66 Maine, 239. Vol. 4, R. C. L., 916.

We have held that as to the contract in suit the defendant must be deemed to be the initial carrier, and that conclusion is supported by this court in former decisions and we do not find the doctrine challenged in other jurisdictions. The rule may be stated thus: that receiving goods destined beyond the terminus of the particular railway, and accepting the carriage through, and giving a ticket or check through, does import an undertaking to carry through and that this contract is binding upon the company. *Wheeler* v. *San Francisco, Etc. R. R. Co.,* 89 Am. Dec., 147 and cases cited. *Perkins* v. *Portland S. & P. R. R. Co.,* 47 Maine, 573; *Hill Mfg. Co.* v. *Boston & Lowell R. R. Co.,* 104 Mass., 122.

Where there are several connecting carriers the question whether the liability of the first carrier extends beyond its own line depends upon the inquiry whether it in any form assumed or held itself out

to the public as assuming any responsibility beyond the terminus of its own route.  By holding itself out as a carrier in this respect, an initial carrier may assume a legal obligation to receive and carry goods beyond its own line, although it does not have any actual arrangement with the connecting lines.  Its liability therefor depends upon the **existence of a contract either** express or implied, and the implied contract may be shown by direct or circumstantial evidence. 4. R. C. L., 881, citing *Grindle* v. *Eastern Express Co.,* 67 Maine, 317.

Express authority of the agent of a common carrier to give a receipt for goods, creating a through contract, need not be proved, when he acted as such in the proper place for receiving goods for the carrier, and was in possession of the carrier's stamp to be used in such receipts, and the carrier took possession of the goods and caused them to be shipped, presumably with knowledge of the receipt. 4 R. C. L., 887 and **cases cited.**

It is immaterial in this case, who owned the cars, or what kind of cars happened to be in use in the circumstances.  The contract was to heat the cars in question and it was made by the defendant in its own **name.  There was** no agency disclosed or pleaded.  The blanks used were in general use by the defendant and there is nothing in the contract or on the forms used to indicate agency for any other company.  It must be regarded as the contract of the defendant.  The jury found that there was a breach of that contract.  That the defendant is liable for such breach is well settled.

*Exceptions overruled.*