## Robert D. Paden, Appellee, v. Rockford Palace Furniture Company, Appellant.

### Gen. No. 6,852.

1. WITNESSES, § 195*—*use of photograph to refresh recollection.* Where, in an action for personal injury to a switchman, a witness has testified that he has no way of refreshing his recollection as to a certain car number, it is not error to permit him after being shown a photograph, in which witness was shown, to answer the question, "Can you by an examination of the photograph refresh your recollection as to that car number?"

2. EVIDENCE, § 277*—*photographs.* In an action for personal injury to a switchman while switching a car to defendant's place of business, photographs taken by the railroad's photographer of the switch engine and the car in various positions so as to reproduce as nearly as possible the scene of the accident are competent, any objection going only to their weight as evidence.

3. EVIDENCE, § 296*—*identification of waybill.* A waybill of a car is sufficiently identified to warrant its admission in evidence, by showing that upon arrival at destination of the car it was stamped, the rate checked, and after the freight was paid it was kept for 2 or 3 days and then sent to the general offices of the railroad company.

---

See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

Paden v. Rockford Palace Furniture Co., 220 Ill. App. 534.

4. APPEAL AND ERROR, § 1625*—*error in excluding evidence cured by subsequent testimony.* The exclusion of certain testimony, if error, is cured by allowing the party to cover the entire subject later by the same witness.

5. TRIAL, § 63*—*exclusion not error where proper foundation not laid.* It is not error to sustain an objection to the question, "How did you travel, upon what kind of transportation?" where there is nothing before the court to show the competency or materiality of the question.

6. TRIAL, § 104*—*striking out answer not responsive.* In an action for injury to a switchman where his cap was found at some distance from where he lay after the accident, and a witness testified that he found a piece of blue shirt near the cap, and that plaintiff wore a blue shirt, and thereafter was asked "Was it a light blue piece too?" and he replied "Yes, just the same kind," it was not error to strike out the latter part of the answer as not responsive.

7. EVIDENCE, § 396*—*opinion by nonexpert witness.* It is not error to exclude the opinion of a nonexpert witness as to whether a piece of blue cloth, found near the place of an accident, was the same kind as the cloth in the shirt of the injured person, where it did not appear that the witness had sufficient knowledge upon which to base an opinion.

8. EVIDENCE, § 23*—*presumption from common experience.* It is a well-established rule of evidence that that which according to the common experience of mankind usually happens in the usual and ordinary course of business is presumed to have happened in a particular case until the contrary appears from the evidence.

9. EVIDENCE, § 23*—*waybills and bills of lading as prima facie evidence.* Waybills, bills of lading and other papers required by law to be issued by a railroad company are prima facie evidence of the facts recited therein.

10. EVIDENCE, § 23*—*waybill as prima facie evidence.* Where a waybill showed that a car was shipped from Powhatan, Louisiana, to a consignee at Rockford, Illinois, and that it was so transported and arrived at Rockford and was there turned over to a connecting carrier to be delivered at its final destination, it makes prima facie proof of such facts.

11. COMMERCE, § 4*—*local switching arrangement as affecting interstate character.* The fact that a car is delivered to its final destination under a local switching arrangement does not determine that it is no longer in interstate commerce, such fact being dependent upon the circumstances of each case, and the fact that the switching tariff arrangement was filed with the Interstate

Commerce Commission, and that the switching charges were paid by the railroads tended to show that the car was still in interstate commerce.

12. WORKMEN'S COMPENSATION ACT, § 4*—*employment in interstate commerce.* A switchman injured while switching a car of merchandise, shipped from another State, to the consignee's place of business is not barred from maintaining a suit to recover for the injury by reason of the Workmen's Compensation Act, since such injury was sustained while the car was engaged in interstate commerce.

13. APPEAL AND ERROR, § 1401*—*sufficiency of evidence.* The findings of the jury will not be disturbed on appeal where there is evidence to sustain such findings.

14. INSTRUCTIONS, § 147*—*selection from among several requested instructions no error where law is fully and clearly set forth.* Where numerous lengthy instructions are tendered, many of which contain the same propositions of law couched in different language, the party cannot be heard to complain if the court does not select the one which states the law most clearly or most favorably, provided all material propositions asked are given and the law applicable is clearly and fully set forth.

15. DAMAGES, § 129*—*when not excessive.* Where an able-bodied man 22 years of age, earning $125 per month, is injured so that his right arm is amputated, and he continues to suffer pain in his shoulder, and was earning only $87.50 per month at the time of the trial, a verdict for $15,000 is not excessive.

Appeal from the Circuit Court of Winnebago county; the Hon. ROBERT K. WELSH, Judge, presiding. Heard in this court at the October term, 1920. Affirmed. Opinion filed March 17, 1921. *Certiorari* denied by Supreme Court (making opinion final).

ROY F. HALL and J. E. GOEMBEL, for appellant.

DAVID D. MADDEN, for appellee.

MR. JUSTICE HEARD delivered the opinion of the court.

Appellant' is a corporation engaged in the manufacture of furniture with its plant located at Rockford, Illinois. Appellee was employed as a switchman by the Chicago & Northwestern Railway Company

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

which had a switch track running through appellant's plant, and, on August 17, 1918, while engaged in a switching operation over this track, was seriously injured, his right arm being run over and mangled to such an extent that it had to be amputated at the shoulder.

Appellee brought suit against appellant for damages as the result of his injuries, alleging in his declaration as the basis of appellant's liability that appellant had built a coal shed near the switch track above mentioned and that the side of the shed next to the switch track had become bulged out so that it came in dangerous proximity to the switch track and that appellee while engaged in switching a car over the sidetrack and in the exercise of ordinary care for his own safety was struck by the posts and timbers of the coal shed with the resultant injuries and that at the time of the injury appellee was engaged in interstate commerce.

The trial resulted in a verdict and judgment for $15,000 damages in favor of appellee, against appellant, from which judgment this appeal has been taken.

It is claimed that the court erred in allowing the witness Edith Hall, an employee of the consignee of the car, to testify over appellant's objections, that she ordered a shipment from Powhatan, Louisiana. At the close of appellee's case this testimony was stricken out and in the view which we take of the case appellant could not have been injured by reason of the jury having heard this testimony.

B. A. Ledogard, a witness for appellee, after testifying that he had no way of refreshing his recollection as to the number of the car in question, was shown a photograph, in which witness was shown, and asked, "Can you by an examination of the photograph refresh your recollection as to that car number?" Objection was made to the question by appellant, the objection overruled by the court and the witness answered, "Yes, sir," and was allowed to state the car

APPELLATE COURTS OF ILLINOIS.

number. This ruling is alleged as error.

A witness can testify only to such facts as are within his knowledge and recollection, but he is permitted to refresh or assist his memory by the use of a written instrument, memorandum or entry in a book; and it is not necessary that the writing shall have been made by the witness himself or that it should be an original writing or even admissible in evidence, provided that after so doing the witness can speak to the facts from his own recollection. *Scovill Mfg. Co. v. Cassidy*, 275 Ill. 462; *Miner v. Phillips*, 42 Ill. 123; 1 Greenleaf on Evidence (15th Ed.), sec. 436; 40 Cyc. 2452.

It was shown by the evidence that immediately after the accident the Chicago & Northwestern Railway Company sent a photographer to take photographs of the place of the accident. The pictures were taken under the direction of the claim agent of the railroad company. The switch engine and car on which appellee claimed to have been at the time of the accident were present and moved from place to place during the taking of the pictures, the object being to reproduce the scene of the accident as nearly as possible. The photographer who took the pictures had been taking pictures for the railroad company for several years. It was shown that some arrangement had been made between the railroad company and appellee whereby the railroad company was to make to appellee certain payments until there had been some adjustment of appellee's case against appellant. The photographs so taken were admitted in evidence over appellant's objection and this ruling of the court is assigned as error. In our opinion the objections urged do not go to the competency of the photographs but only to their weight as evidence.

It was claimed by appellee that the car on which appellee was riding at the time of the accident was a car shipped from Powhatan, Louisiana to the Rock-

ford Republic Furniture Company of Rockford, Illinois, and in support of this contention offered in evidence a paper purporting to be an original waybill covering the shipment of the car in question and this paper was admitted in evidence over appellant's objection and this ruling is assigned for error. It was shown by the evidence that a waybill arriving in Rockford was stamped, the rate was checked and after the freight was paid the paper was kept in Rockford 2 or 3 days and then sent to the general offices in Chicago, Illinois. It would be almost impossible to trace a waybill such as this through its course through the offices of a railroad company like the Illinois Central Railroad Company, employing an almost innumerable number of changing employees, but we think the paper in question was sufficiently identified to warrant its admission in evidence.

Several other rulings of the court in the admission of evidence are called to our attention in appellant's argument but we are of the opinion that there was no reversible error in any of such rulings.

It is claimed by appellant that the court erred in refusing to allow witness Ledogard to state which side of the train a switchman should ride when going around a curve. Without passing upon this question it is sufficient to say that afterwards appellant was allowed to cover this entire subject with the same witness.

Witness Pontius, the photographer, testified that he came to Rockford over the Chicago & Northwestern Railway to testify upon the trial. He was asked, "How did you travel, upon what kind of transportation?" An objection by appellee's attorney was sustained and this ruling is assigned as error. While it is proper to show that the expense of a witness in attending court is being borne by an interested party, no offer of such proof was made and there is noth-

ing before this court to show the competency or materiality of the question.

F. B. Piersol, a claim agent of the Chicago & Northwestern Railway Company was called as a witness by appellant, and on his examination he was asked the following questions: "Q. Do you know whether there has been by the Northwestern Railway Company any arrangement with the plaintiff by which that case is to be adjusted and settled?" (This referred to the case arising from appellee's injury.) And also the following question: "Q. Do you know whether or not there has been any arrangement between the Northwestern Railway Company and the plaintiff with reference to the Northwestern settling and adjusting with him for the injury he received to his arm August 17, 1918?" To each of these questions, the following objection was made: "I object to the question." The objection was sustained and these rulings of the court are assigned as error. Piersol was subsequently recalled by appellant and his knowledge on the subject thoroughly exhausted.

There were two theories of the cause of the accident: One was, inferentially from the testimony of the appellee, that he was knocked off the car by a post. The other was that he had, for some reason or other, attempted to get off the train, 20 to 35 feet before he reached the post, and that at the place where he attempted to get off his cap was found and that there were marks in the earth indicating something had been dragged from that point to the place where the appellee laid after the train had passed him. A witness testified to having found "some of a shirt, it was light blue," right near where the cap was. On redirect examination appellant, having permission of the court to do so, asked the following questions:

"Q. Was that piece of blue shirt that you found

there near where the cap was a piece of the boy's shirt?"

The witness answered "Yes," but there was an objection by the plaintiff which was sustained, and a motion to strike out the answer, which was allowed. Then the following questions were asked:

"Q. Was it the same kind of cloth as the boy's shirt?"

This was objected to, and sustained. The witness then swore that the appellee wore a light blue common working shirt, and he was asked this question:

"Q. Was it a light blue piece too?"

And replied, "Yes, just the same kind." This question was objected to, and there was a motion to strike out the answer and the latter part of the answer was stricken out, to which the appellant excepted, and it is argued that these rulings of the court were erroneous. The portion of the answer which was stricken out was not responsive to the question and there was no error in that respect. While it is true that a nonexpert witness, in some instances, when the subject-matter to which the testimony relates is such that in its nature it cannot be reproduced and described to the jury precisely as it was at the time, may give his opinion, it did not appear from the evidence that the witness had any sufficient knowledge upon which to base an opinion.

To avoid the provisions of the Workmen's Compensation Act, the appellee alleged in his declaration that he was at the time of his injury handling a car which "was then on a part of its continuous trip from a point in the State of Louisiana direct to the Rockford Republic Furniture Company, whose factory and place for carload deliveries was adjacent to said switch track at a point beyond the factory of the defendant, and in order to deliver the car it was necessary to pass the factory of the defendant on said track, and that the passing of the factory of the de-

feudant on the switch track was a part of the continuous trip of the car of material from the point outside of the State of Illinois to the consignee, the Rockford Republic Furniture Company.''

It is strenuously urged by appellant that the evidence does not show that at the time of the accident appellee was engaged in interstate commerce.

Whenever any shipper desires to ship a car of goods from a point in one State to a point in another State and the shipment is to be made over connecting lines, it is the duty of the initial carrier to route such shipments over the connecting lines from the place of shipment to destination, to issue a through bill of lading therefor, and to transport such shipment over the lines mentioned and by the routing instructions contained in the bill of lading. Interstate Commerce Act 1917.

In the ordinary course of business when such shipment is made a waybill is issued by an authorized agent of the initial carrier at the point of shipment to accompany the car to its destination. Such waybill shows the name of the shipper, the name and address of the consignee, the number of the car, the character of the goods shipped, the point from which shipment is made and the route by which the shipment is to go. In the ordinary course of business usually the waybill is delivered to the conductor of the freight train on which the shipment is made, or is sent by faster train to the first point of transfer to a connecting carrier and from thence in the usual course of business usually accompanies the shipment to its destination. The Interstate Commerce Act requires each connecting carrier mentioned in the bill of lading to receive the shipment and transport it to the next connecting carrier until it reaches its destination and is delivered to the consignee. Ordinarily in the usual course of business an authorized agent of each connecting carrier marks or stamps upon the

waybill the date of its receipt of the shipment.

It is a well-established rule of evidence that that which according to the common experience of mankind usually happens in the usual and ordinary course of business, is presumed to have happened in a particular case until the contrary appears from the evidence. *Commonwealth v. Jeffries,* 7 Allen (Mass.) 548; *Meyer v. Krohn,* 114 Ill. 574; *Ashley Wire Co. v. Illinois Steel Co.,* 164 Ill. 149; *State v. Gritzner,* 134 Mo. 512, 36 S. W. 39; *Western Twine Co. v. Wright,* 11 S. D. 521, 78 N. W. 942; *Oregon Steamship Co. v. Otis,* 100 N. Y. 446, 3 N. E. 485; *Perry v. German-American Bank,* 53 Neb. 89, 73 N. W. 538.

It has also been held that papers required by law to be issued by a railroad company in the regular course of business, such as bills of lading and way-bills, are prima facie evidence of the facts recited therein. *Tarbox v. Eastern Steamboat Co.,* 50 Me. 339; *Little v. Boston & M. R. R.,* 66 Me. 239; *Dow v. Portland Steam Packet Co.,* 84 Me. 490, 24 Atl. 945; *Ross v. Maine Cent. Ry. Co.,* 114 Me. 287, 96 Atl. 223.

Applying these rules to this case we find there is prima facie evidence that on July 27, 1918, Illinois Central car No. 37188, the car in question, was shipped from Powhatan, Louisiana, by P. T. Stone to the Rockford Republic Company, Rockford, Illinois, over the Texas & Pacific and Missouri Pacific, and in the course of time arrived at Rockford, Illinois over the Illinois Central Railroad by which company it was turned over to the Chicago & Northwestern and was on its way to its final destination when the accident occurred.

It is contended, however, that even conceding these facts to be true the car was not in interstate commerce at the time of the accident for the reason, as it is claimed, that the Illinois Central Railroad under a local switching arrangement at the request of the consignee turned the car over to the Chicago & North-

western Railway Company for delivery and that when the car was so turned over, delivery was made by the interstate carrier to the consignee, that the interstate journey ended, and the car from that time on was not in interstate commerce.

While there was a local switching arrangement between the several railroad companies in Rockford, the fact that the arrangement was local has no effect in determining whether a switching operation under it was interstate or intrastate, that question being determined by the circumstances of each particular operation. That this is true is evidenced by the fact that this switching tariff arrangement was by the railroad companies filed with the Interstate Commerce Commission. The interstate character of this particular switching movement is further evidenced by the fact that according to the terms of this switching arrangement its cost was to be paid by the Illinois Central Railroad Company out of the line freight charges and not by the consignee.

We are of the opinion that at the time of the accident the car in question was as yet upon its interstate journey, that appellee was engaged in interstate commerce and that he was not barred from maintaining his suit by reason of the Workmen's Compensation Act of this State.

It is contended by appellant that the evidence was not sufficient to establish the fact that appellee was knocked from the car by being struck by the post or timbers of the coal shed. There is evidence tending to show that appellee jumped or fell from the car before it reached the coal shed. There is also evidence tending to show that appellee was thrown to the ground by reason of being struck by something and that the post and timbers in question were so situated that appellee could have come in contact with them and that they were the only things so situated. The jury saw and heard the witnesses and this court

under the evidence in this case would not be justified in disturbing their finding.

It is contended by appellant that the evidence shows that appellee used no care for his own safety. Appellee had only been over the track in question twice previously and while the evidence tending to show due care on his part is very slight, there was some evidence upon which the jury could base their finding in that regard.

At the close of appellee's case and at the close of all the evidence appellant moved the court to instruct the jury to find the defendant not guilty, which motions the court denied and these rulings are assigned as error. We are of the opinion that the evidence was such as to require its submission to the jury.

At the request of appellee the court gave to the jury six instructions. Appellant argues that the giving of five of these instructions was error. While in some recent cases instruction number six has been criticized in minor points, we do not think any of the instructions are erroneous for any of the reasons assigned by appellant.

Appellant tendered to the court twenty-seven instructions in its behalf of which the court gave to the jury sixteen and refused eleven and this refusal of these instructions is assigned as error, and argued at some length. Without going into detail, suffice it to say, that of the refused instructions, some did not state the law correctly, others were not based upon the evidence in the case, while all the material propositions of those which did state the law applicable to this case were embodied in other given instructions. When an attorney tenders to the court numerous lengthy instructions, many of them containing the same proposition of law couched in different language, he cannot be heard to complain, if the court, in the necessarily hurried examination of them, does not select the instruction which states the law most

clearly or most favorably to the party asking them, provided all the material propositions asked to be given are contained in the given instructions. The instructions given clearly and fully set forth the law applicable to appellant's defenses and there was no error in the refusal of instructions.

It is contended by appellant that the verdict was excessive. Appellee at the time of the accident was an able-bodied man, 22 years of age, in excellent physical condition, earning $125 per month. His right arm was amputated.' He suffered great pain and at the time of the trial he was still suffering pain in his shoulder. At the time of the trial he was only earning $87.50 per month. We are of the opinion that the damages allowed were not excessive.

The judgment is affirmed.

*Affirmed.*