CONTINENTAL PAPER BAG COMPANY

*vs.*

MAINE CENTRAL RAILROAD COMPANY.

Cumberland.    Opinion December 8, 1916.

*Duties and liabilities of common carriers. Effect of Carmack Amendment.*
*Rule of law as to proximate and remote cause where act of God*
*intervenes. Rules as to practice in actions brought*
*in State Courts under Federal Statutes.*

An action for damages upon a bill of lading issued by defendant to plaintiff under the provisions of the "Carmack Amendment."

The exclusiveness and paramount character of a Federal Law in relation to any subject within constitutional powers of Congress cannot be questioned.

In actions under such statutes brought in the State courts, while questions of procedure and evidence are to be determined according to the laws of the forum, questions inseparably connected with the right of action, such as those of liability of defendant and the measure of damages must be settled according to the general principles of law as administered in the Federal courts.

Hence, in actions upon a bill of lading, where the shipment is interstate, the rights and liabilities of the parties depend upon the acts of Congress, the bill of lading and common law as accepted and applied in the Federal tribunals.

Where in an action upon a bill of lading, the shipment being interstate, the arrival of the goods at the place of destination is delayed by the negligence of one or more connecting carriers and after such arrival they are injured by an unprecedented flood amounting to an act of God, the flood, and not the delay, is the proximate cause of the injury.

The prime object of the Carmack Amendment was to bring about a uniform rule of responsibility as to interstate commerce and interstate bills of lading and the principal subject of responsibility embraced by the act of Congress carries with it necessarily the incidents.

Action on the case to recover damages for the alleged negligence in failing to deliver certain property delivered by plaintiff to defendant carrier to be taken over its roads and connecting roads to point of destination. Defendant filed plea of general issue and alleged further, by way of brief statement, that the loss, damage or injury, if any, to the property mentioned in the declaration of the plaintiff was caused by an act of God. Case reported to Law Court upon certain stipulations and agreed statement of facts. Judgment for defendant.

Case stated in opinion.

*Verrill, Hale, Booth & Ives, and Benjamin B. Sanderson,* for plaintiff.

*Charles H. Blatchford,* for defendant.

SITTING: SAVAGE, C. J., CORNISH, KING, BIRD, HALEY, PHIL-BROOK, JJ.

BIRD, J. This is an action for damages upon a bill of lading issued by defendant to plaintiff. The case comes before us upon report on an agreed statement of facts which is summarized in the brief of plaintiff as follows:

"The plaintiff delivered a carload of paper bags and wrapping paper to the defendant at Rumford, Maine, on March 6, 1913, consigned to Dayton, Ohio. The shipment was delayed in transit several days owing to the admitted negligence of one or more of the connecting carriers, arriving at Dayton for delivery on Sunday, March twenty-second. The next day an extremely severe rain

storm occurred throughout the day, making it practically impos·
sible for the consignees to unload the shipment. On Tuesday, the
twenty-fourth day of March, there was an unprecedented flood in
Dayton, amounting to an act of God, which partially submerged
the car containing the plaintiff's goods, at that time stationed on
the railroad siding, and damaged them. It is admitted that, but
for the negligent delay, the damage in all probability would not
have occurred. The goods, in damaged condition were subse-
quently tendered to the consignee, who refused the same, and after
failure to receive instructions from the plaintiff as to their dispo-
sition, were sold at auction.

"The bill of lading, which is made a part of the agreed statement
of facts, provides in Section I, that the carrier shall not be liable
for any loss or damage or delay caused by the act of God. Also
in Section III, that the carrier's liability for damage shall be based
on the value of the property at the time of shipment unless a lower
valuation is determined by the classification or tariff upon which
the rate is based whether or not such damage occurs from negli-
gence.

"The agreed statement provides that it shall be immaterial, for
the purposes of this suit, which carrier negligently delayed the
shipment."

It may be added to this summary that by paragraph five of the
statement it is agreed that the tariffs governing the movement of
the shipment in question were filed and published as provided by
law; that there were two rates in effect, one the rate used by plain-
tiff, upon executing the uniform bill of lading, "Exhibit A," and
the other a rate 10 per cent higher to be applied in case the property
was shipped under full common carrier's liability.

Under this statement of facts, a single issue only is presented,
whether a common carrier, engaged in interstate commerce is liable
for damage to goods which are subjected while in his custody to
injury by an act of God because of the carrier's negligent delay in
transportation and but for whose negligence the goods would not
have been injured.

The solution of the question depends upon the interpretation of
the Carmack Amendment, so called, in conformity to the provisions

of which the bill of lading was drawn and issued.   The portion of the amendment involved in the present inquiry is:

"That any common carrier, railroad, or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed, *provided,* That nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing laws," 34 U. S. Stats. at Large, Ch. 3591, pp. 593, 595.

The exclusiveness and paramount character of a Federal law in relation to any subject within the constitutional powers of congress cannot be questioned.   The enactment of such a statute removes its subject matter from the sphere of state action; *Nor. Pac. Ry. Co.* v. *Washington,* 222 U. S., 370, 375, 378.   In actions brought in the State courts under such statutes, while questions of procedure and evidence are to be determined according to the laws of the forum, questions inseparably connected with the right of action, such as those of the liability of defendant and the proper measure of damages, must be settled according to general principles of law as administered in the Federal courts; *C. &c. Ry. Co.* v. *Kelly,* 241 U. S., 485, 491; *Minneapolis & St. Louis R. R. Co.* v. *Bombolis,* 241 U. S., 211; *Second Employers' Liability Cases,* 223 U. S., 1, 58.

Coming to the specific question to be determined, it cannot be questioned that the shipment being interstate the rights and liabilities of the parties depend upon the acts of Congress, the bill of lading and common law as accepted and applied in the Federal tribunals.   *Cleveland & St. L. Ry.* v. *Dettlebach,* 239 U. S., 588; *Southern Express Co.* v. *Byers,* 240 U. S., 612, 614; *Southern Ry. Co.* v. *Prescott,* 245 U. S., 632, 639, 641; *Cincinnati etc. Ry. Co.* v. *Rankin,* 241, U. S., 319, 327.   See also *Southern Ry. Co.* v. *Gray,*

*Admx.,* 241 U. S., 333, 339; *Georgia etc. Ry.* v. *Blish Co.,* 241 U. S., 190, 195. And so our own court in *R. S. Royster Guano Co.* v. *Cole,* 115 Maine, 387.

Upon the issue before us in this case, the courts of the great majority of the states of the Union have held the carrier liable. The courts of Massachusetts, Ohio and Pennsylvania, have concluded otherwise. In *Morrison* v. *Davis,* 20 Pa. St. (1852) 171, goods under transportation on a canal were injured by the wrecking of the boat, caused by an extraordinary flood. It was shown that a lame horse used by defendant delayed the boat, which would otherwise have passed the place where the accident occurred in time to avoid the injury. The court held the flood to be the proximate cause of the disaster, and the delay, the remote cause, and that the maxim, causa proxima, non remota spectatur, applied as well to contracts of common carriers as to others. This was followed by *Denny* v. *N. Y. C. R. R. Co.,* 13 Gray (1859) 481, in which *Morrison* v. *Davis,* supra, was approved and followed. The question was before the Supreme Court of the United States in 1869 and that court after quoting the two cases last cited said "of the soundness of this principle we are entirely convinced." *Railroad Co.* v. *Reeves,* 10 Wall (1869), 176, 191. The same principle is recognized in *Scheffer* v. *Railroad Co.,* 105, U. S., 249 and by *St. Louis &c. Ry. Co.* v. *Commercial Ins. Co.,* 139 U. S., 233, 237. And there are many decisions of the other Federal Courts to the same effect, and among them may be cited *Empire State Cattle Co.* v. *Ry. Co.,* 145 Fed., 457 affirming 135 Fed., 135; *Thomas* v. *Lancaster Mills,* 71 Fed., 481.

It should not be overlooked that the prime object of the Carmack amendment was to bring about a uniform rule of responsibility as to interstate commerce and interstate bills of lading and that the principal subject of responsibility embraced by the act of Congress carried with it necessarily the incidents; *A. T. S. F. Ry. Co.* v. *Harold,* 241 U. S., 371, 378.

In view of these decisions the court is of opinion that had this case been submitted to a jury, the trial court would have been justified upon the evidence in directing a verdict for defendant.

In accordance with the agreed statement of facts,

*Judgment may be entered for defendant.*