HARRY F. GRANT

*vs.*

AMERICAN RAILWAY EXPRESS COMPANY.

Hancock.    Opinion January 2, 1928.

*In an action against a common carrier alleging negligence, ordinarily where non-delivery of a shipment is proved, a prima facie case is supported by a presumption of causative fault; not so, however, when the loss resulted from an event, liability for which is excluded by a valid stipulation in the contract for carriage.*

In this case it is apparent that the inherent nature or propensity of the dog, the consequence of her vitality, her irrepressible instinct to escape from bondage, or, as some of the decided cases say, "her proper vice," freed the animal; no negligence of the carrier contributing. The contract of transportation exempts the carrier from loss so arising.

Although the defendant is not liable for the escape from the crate, is liability shown afterwards? Negligence has always relation to the circumstances in which one is placed, and what an ordinarily prudent person would do or omit to do in such circumstances. Measured by this standard, no fact proved, nor inference legitimately to be drawn, ascribes the loss of the dog to any neglect or fault of the defendant. For the want of such evidence the plaintiff's case must fail.

On report. An action against a common carrier to recover the value of a dog delivered to it for transportation, which escaped from the possession of defendant and was killed by an automobile. At the conclusion of the evidence the case was reported to the Law Court. Judgment for defendant.

The case fully appears in the opinion.

*Fellows & Fellows,* for plaintiff.

*Ryder & Simpson,* for defendant.

SITTING: WILSON, C. J., PHILBROOK, DUNN, DEASY, STURGIS, PAT-
TANGALL, JJ.

DUNN, J.   This action comes here on report by the nisi prius jus-
tice with the assent of the parties for decision on the legally admis-
sible evidence.   R. S., Chap. 82, Sec. 46.

Harry F. Grant, a breeder of dogs, seeks to recover from the Ameri-
can Railway Express Company, a common carrier, damages for the
loss in transit of his brood bitch, the interstate carriage whereof that
company had undertaken for hire.

The declaration is in tort.   There are two counts.   One differs es-
sentially from the other only in alleging that notice and filing of the
plaintiff's claim for damages were timely, and that the present action
was seasonably begun.   The first count is for full common-law lia-
bility.   The second, by its allegations respecting preliminary notice
and the beginning of suit, impliedly recognizes the Interstate Com-
merce Act, an enactment by the Congress of the United States.   24
U. S. Stat. L., 379, and acts amendatory;   Code Title 49.   Both
counts contemplate liability through want of care and diligence of
the carrier's antecedent duty to transport safely and deliver the prop-
erty intrusted to its care.   Defendant pleads the general issue.

The case being up on report, the underlying proposition, whether
liability be established, may have consideration directly.   *Folsom*
v. *Smith*, 113 Maine, 83.

Falling within that class wherein the jurisdiction of the Congress
is exclusive, the controversy must be decided by Federal law.   *Adams
Express Co.* v. *Croninger*, 226 U. S. 491, 57 Law ed. 314.   Our State
rules, thus to designate those of the forum, may have no other office
than to regulate the evidence and the procedure.   *Cincinnati, N. O.
& P. R. Co.* v. *Rankin*, 241 U. S., 319, 60 Law ed. 1022; *Continental
P. B. Co.* v. *Maine C. R. Co.*, 115 Maine 449.

There is small conflict in the evidence.   On November 20, 1925,
plaintiff took his bitch to the receiving office of the defendant in
Bucksport, Maine.   The dog was inclosed in a double-lathed crate.
The plaintiff says, in evidence, that the crate, which was originally
well made, had been used by him without mishap to ship singly three
or four other dogs, as the agent knew; and that it was in fit condition
for shipping this dog.

At the express, though the shipper may not have stated that the crate was secure, he so implied. The plaintiff testifies that the agent, on looking at the crate, agreed that it appeared to be "all right." If the crate were insecure, apparently the agent was unaware of it, and any doubt he might have had plaintiff's attitude dispelled.

The crated dog was accepted for continuous carriage over the defendant's route on connecting railroads to Reading, Massachusetts.

Testimony by the plaintiff portraits, what his counsel argue was equivalent to the plaintiff's saying, that responsibility for the shipment should be coextensive with the measure of responsibility at common law. For this, the plaintiff, it is urged, stood prepared to pay. But, counsel continue, on being told in effect by the agent, that the express company would not become a quasi insurer, and that shipment might be on contract limiting the carrier's liability, but not assuming to exempt the carrier from loss or injury resulting from its own negligence, or not at all, the plaintiff, thus denied option or opportunity to ship as he would, coercively shipped as he did.

It is in testimony by the plaintiff that he asked to have his dog insured for $250. Concededly this was the dog's real worth. The agent, on the stand, gives it as his impression that the subject of insurance was mentioned. Again, he testifies that the shipper wanted $250. in case of loss, "and, as far as we knew in our office, we did that."

From the carrier's schedule of rates and classifications, which had been filed with the Interstate Commerce Commission, approved by that tribunal, and published and posted, the agent determined the shipment rate with reference to the declared value, and informed the shipper the amount. The shipper paid the expressage. He signed, and the carrier's agent in its behalf signed also, that document which defendant has put in evidence as the contract for transportation. The counterpart was issued to the shipper for the bill of lading.

The signed document provides that the carrier shall not be liable for loss arising from the nature or propensities of the animal, and requires, precedently to the recovery of damages, that the plaintiff make proof of the carrier's negligence.

Insistence is that, whether that which purports to be a contract, is a contract, must be determined from the facts and circumstances

surrounding its execution. Not that counsel for the plaintiff would essay to contradict or explain unambiguous written terms, but they rely on evidence advanced as tending to show that plaintiff never freely and fairly assented to the terms. Argument is that, as the plaintiff was not permitted to ship as he desired, his signature is, in legal view, no signature.

On a different record the argument might be apropos, but in this case it falls short. No rate for transporting property of the kind tendered by the plaintiff, on the basis of virtual insurance against all acts which result from human agency, although occurring without any fault or neglect upon the carrier's part, appears to have been approved by the Interstate Commerce Commission. A contract at variance with an approved tariff would have been invalid. *Chicago & A. R. Co.* v. *Kirby*, 225 U. S. 155, 56 Law ed. 1033.

Interstate shipments are controlled by Federal statutes. *Adams Express Co.* v. *Croninger*, supra. Under the congressional Act to Regulate Commerce, as amended, common carriers of commerce among the states must file with the Interstate Commission schedules of all rates or tariffs. Until the rates are filed and approved the carrier may not carry or convey from a point in one state to a point in another. When the carrier may transport the duly filed and approved rate is, for all shipments of like character, the only lawful rate. *Chicago & A. R. Co.* v. *Kirby*, supra; *Southern R. Co.* v. *Prescott*, 240 U. S. 632, 60 Law ed. 836; *Georgia, F. & A. R. Co.* v. *Blish Milling Co.*, 241 U. S. 190, 60 Law ed. 948. Deviation therefrom there may not be, because deviation would be violative of equality and uniformity, and deny all shippers similarly situated that like treatment, which the interstate statute requires. *Chicago & A. R. Co.* v. *Kirby*, supra; *Southern R. Co.* v. *Prescott*, supra; *Georgia, F. & A. R. Co.* v. *Blish Milling Co.*, supra; *Boston & M. R. Co.* v. *Hooker*, 233 U. S., 97, 58 Law ed., 868; *Atchison, T. & S. F. R. Co.* v. *Robinson*, 233 U. S. 173, 58 Law ed. 901; *Louisville & N. R. Co.* 237 U. S. 94, 59 Law ed., 853; *Pittsburgh, C. C. & St. L. R. Co.* v. *Fink*, 250 U. S. 577, 63 Law ed., 1151.

Copies of the defendant's rate tables, and of its classification schedules, the latter certified by the Secretary of the Interstate Commerce Commission, as effective on the shipment date, are of the record. In relation to the transportation of dogs there are but two rates.

These are available only by uniform contracts limiting liability of the carrier to negligence. One rate is initial or basic. Under a contract of carriage with this rate an element fifty dollars is the limit of damages. Under the other form, the shipper may, by paying a higher rate, secure a higher recovery than the initial rate affords. Value the shipment, the shipper may as he will, and, to the value set by him, it is for the rate to be adjusted. - It is competent for a carrier to have alternate rates. *Kansas City S. R. Co.* v. *Carl,* 227 U. S. 639, 57 Law ed. 683.

Defense is that this shipper, with option and opportunity to choose between the lower and higher rates, chose the higher, and declared the actual value of his dog as the basis of the carriage charge. The defense is justified. The grounds demonstrating such result are that, as the carrier might not carry at common-law liability without rates approved by the Interstate Commerce Commission, and therefore the plaintiff could ship in but one or the other of the only two ways for which there were approved rates, the plaintiff must be held to have shipped at the higher rate. When applied to facts like those in the case at bar, this, in the speech of the agent, was insurance "as far as we knew in our office." It was as nearly full common-law liability as might be in the circumstances.

Noon was the time when the shipment went forward from Bucksport, unaccompanied by the shipper or any agent of his, nor required by the shipping arrangement to be.

An hour later the quiet and unharmed dog, in the still unimpaired crate, arrived at Bangor, a junction point. Transshipment was had from the branch-line express car to the through express car, in which the crate and its content were left near an open side door. Of the two transfermen, one went into an express car ahead, the other into the express room in the station, some twelve feet away, and there remained about ten minutes.

On his way back from the room the transferman saw the dog loose on the car floor and made for her. The dog, however, jumped out of the car and dashed up the track. The man gave chase afoot. Other employees of the defendant soon joined in the chase; some of them went in an automobile. · The dog was located readily. From the railroad track she turned and ran, over public streets and private lands, hither and yon, well out on the east side of the city. The dog

was seldom out of the sight of her pursuers. Attempts to coax her within reach, which the pursuers continued till the darkness of night settled, all failed. Meanwhile, the carrier had sent word through the telephone for the shipper, who, being away from home that afternoon, was advised for the first time on the following morning. Defendant advertised the loss in the newspapers, notified the police department, and warned its own drivers to keep lookout for the runaway. Next afternoon, at the opposite end of the city, a stranger's motor truck killed the dog.

That, to quote the plaintiff, the dog made her escape from the crate by "gnawing out of it," seems to be accepted by the opposite counsel as the manner in which the escape had been effected, and is reasonable inference from proved facts.

Notice and filing by the plaintiff of his claim for damages, and the institution of his action, are admitted to have been seasonable.

That the loss actually resulted from the carrier's negligence, plaintiff must prove. *Morse* v. *Canadian P. R. Co.*, 97 Maine 77. The presumption of causative fault which, in an action against a common carrier, when non-delivery of a shipment is proved, makes a prima facie case, and leaves it for the defendant to go forward with rebutting evidence, is not applicable where, as here, the evidence shows, at first sight at least, that the loss resulted from an event, liability for which is excluded by a valid stipulation in the contract for carriage. Careless or negligent conduct or other fault in fact, preponderatingly established against the carrier by the shipper, is the test of liability. *Morse* v. *Canadian P. R. Co.*, supra.

Liability on the part of the defendant, until the escape of the dog from the crate, is not, and plaintiff does not stress it to be, shown.

It would seem too clear for anything but statement that the inherent nature of the dog, the consequence of her vitality, the irrepressible instinct of the animal to escape from bondage, or, as some of the decided cases say, "her proper vice," freed the animal; no negligence of the carrier contributing.

At common law, as the mother country knows it, the vice of the beast excuses the carrier, provided the carrier has been guilty of no negligence causing the loss. *Blower* v. *Great Western R. Co.*, L. R. 7 C. P. 655. In the present case, the contract of transportation, to

recur to it again, exempts the carrier from loss arising from the nature or propensity of the animal.

Although the carrier is not liable for the escape from the crate, is liability shown afterward?

Negligence is the gist of the action. Negligence has always relation to the circumstances in which one is placed, and what an ordinarily prudent man would do or omit to do in such circumstances. *Charnock* v. *Texas & P. R. Co.*, 194 U. S. 432, 48 Law ed. 1057. Measured by this standard, no fact proved, nor inference legitimately to be drawn, ascribes the loss of the dog to any neglect or fault of the defendant. For the want of such evidence, the plaintiff's case must fail.

*Judgment for defendant.*