MAINE CENTRAL RAILROAD CO.

*vs.*

FRED I. MERRILL, INC.

Cumberland.    Opinion, October 5, 1961.

*Scott W. Scully,* for plaintiff.

*Royden A. Keddy & Charles P. Barnes II,*
for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN DUBORD, SIDDALL, JJ.

WILLIAMSON, C. J. This action by the Maine Central Railroad Co. against Fred I. Merrill, Inc. to recover undercharges on two interstate freight shipments is before us on report upon an agreed statement of facts. The railroad is engaged in interstate and intrastate commerce as a common carrier and is subject to the Interstate Commerce Act. 49 U. S. C. A. § 1 *et seq.*

The first shipment was from a shipper in South Carolina consigned to the defendant at Bangor, freight charges collect. Shortly after delivery in August 1958, the defendant paid the freight charges billed by the railroad in the amount of $683.10. The railroad later discovered the correct charge under the classifications and tariffs published and filed with the Interstate Commerce Commission should have been $972.90. In December 1958 the railroad first requested payment of the balance due of $289.80 for additional freight charges. The defendant has refused to make payment.

The second shipment was from a shipper in Wisconsin consigned to the shipper at Portland, "notify Fred I. Merrill, Inc. at Portland, Maine, freight charges collect." In December 1959 the shipment was delivered to the defendant which paid the freight charges of $922.50 billed by the rail-

road. It later appeared that the correct charge should have been $1454.85. The defendant has refused to pay the balance due amounting to $532.35 since demand was made in December 1959.

With reference to each shipment, if the evidence is admissible, it is agreed: that the defendant paid the shipper the purchase price of the items shipped after deducting the freight charges paid the railroad; that the railroad's demand for payment of a deficiency in freight charges was made subsequent to the payment by the defendant to the shipper; that such payment terminated the business relationship between the defendant and the shipper; that the railroad had no knowledge of the terms of the agreement with the shipper or of payment of the purchase price.

In each instance "(the railroad) objects to evidence relating to contractual relationships between Defendant and third parties and evidence of payments made by Defendant to third parties as being irrelevant."

Decision is controlled by Federal law. The pertinent provision of the Interstate Commerce Act reads:

> ".. nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any service in connection therewith, between the points named in such tariffs than the rates, fares, and charges which are specified in the tariff filed and in effect at the time; nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares, and charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs."

49 U. S. C. A. § 6, par. (7).

For our purposes liability of the defendant in each instance is based on this provision. There is no suggestion

that the defendant avoided (or indeed on the facts could have avoided) liability for additional charges found due after delivery under 49 U. S. C. A. § 3 (3). The statute relating to demands discharged by partial payment (R. S., c. 113, § 64), would not be applicable in any event to this situation which is controlled, as we have said, by Federal law.

In our view the defendant is here liable for the undercharges under principles long since firmly established. The Supreme Court, in the leading case of *Pittsburgh, C., C. & St. L. Ry. Co.* v. *Fink*, 250 U. S. 577, in holding the consignee liable under an identical statute, said at p. 581:

> "The purpose of the Act to Regulate Interstate Commerce, frequently declared in the decisions of this court, was to provide one rate for all shipments of like character, and to make the only legal charge for the transportation of goods in interstate commerce the rate duly filed with the Commission. In this way discrimination is avoided, and all receive like treatment, which it is the main purpose of the act to secure."
>
> \* \* \* \* \* \* \* \* \* \*
>
> "It was, therefore, unlawful for the carrier upon delivering the merchandise consigned to Fink to depart from the tariff rates filed. The statute made it unlawful for the carrier to receive compensation less than the sum fixed by the tariff rates duly filed. Fink, as well as the carrier, must be presumed to know the law, and to have understood that the rate charged could lawfully be only the one fixed by the tariff. When the carrier turned over the goods to Fink upon a mistaken understanding of the rate legally chargeable, both it and the consignee undoubtedly acted upon the belief that the charges collected were those authorized by law."
>
> \* \* \* \* \* \* \* \* \* \*
>
> "The transaction, in the light of the act, amounted to an assumption on the part of Fink to pay the

only legal rate the carrier had the right to charge or the consignee the right to pay. This may be in the present as well as some other cases a hardship upon the consignee due to the fact that he paid all that was demanded when the freight was delivered; but instances of individual hardship cannot change the policy which Congress has embodied in the statute in order to secure uniformity in charges for transportation."

\* \* \* \* \* \* \* \* \* \*

"It is alleged that a different rule should be applied in this case because Fink by virtue of his agreement with the consignor did not become the owner of the goods until after the same had been delivered to him. There is no proof that such agreement was known to the carrier, nor could that fact lessen the obligation of the consignee to pay the legal tariff rate when he accepted the goods. *Pennsylvania R.R. Co. v. Titus*, 216 N.Y. 17. Nor can the defendant in error successfully invoke the principle of estoppel against the right to collect the legal rate. Estoppel could not become the means of successfully avoiding the requirement of the act as to equal rates, in violation of the provisions of the statute. *New York, New Haven & Hartford R.R. Co. v. York & Whitney Co.*, 215 Massachusetts, 36, 40."

See also *Louisville & Nashville R. R. Co. v. Maxwell*, 237 U. S. 94; *N. Y. Cent. R. R. v. York & Whitney Co.*, 256 U. S. 406; *Baldwin v. Scott County Milling Co.*, 307 U. S. 478, 59 S. Ct. 943, 948; *F. Burkhart Mfg. Co. v. Fort Worth & D. C. Ry. Co.*, 149 F. (2nd) 909; *Southern Pac. Co. v. Wheaton Brass Works*, 5 N. J. 594, 76 A. (2nd) 890; *New York, N. H. & H. R. R. Co. v. Calif. Fruit G. Exch.*, 125 Conn. 241, 5 A. (2nd) 353; *Railway Express Agency v. Michelson*, 311 Mass. 704, 42 N. E. (2nd) 805; *Montpelier & Wells R. R. R. v. Caldbeck-Cosgrove Corp.* (Vt.), 8 A. (2nd) 681; 13 C. J. S., *Carriers* § 393; 9 Am. Jur., *Carriers* §§ 160, 164, 624.

The *Fink* case has been cited with approval in *Grant* v. *American Ry. Express Co.*, 126 Me. 489, 139 A. 784, in which the court said, at p. 492:

"When the carrier may transport the duly filed and approved rate is, for all shipments of like character, the only lawful rate. . . Deviation therefrom there may not be, because deviation would be violative of equality and uniformity, and deny all shippers similarly situated that like treatment, which the interstate statute requires."

In *Boston and Maine R. R.* v. *Hannaford Bros., et al.*, 144 Me. 306, 68 A. (2nd) 1, the consignee as agent of the consignor received carloads of bananas and requested collection of the freight charges from the consignor. The railroad sought for a period of thirteen months without success to recover payment from the consignor. The court, in holding for the railroad, said:

"The consignee of property transported in interstate commerce by acceptance of delivery makes himself liable for the transportation charges." (Citing *Fink, supra,* and *Central Iron & Coal Co., infra.*)

The defendant seeks in practical effort to apply a rule quite different from that settled in the *Fink* case, *supra.* It asks two questions: (1) "May Plaintiff hold Defendant responsible for the payment to Plaintiff of the undercharges. . ?" If answered, yes, (2) "May Plaintiff so hold Defendant prior to Plaintiff's exhausting all remedies against the parties ultimately responsible for the payment of those undercharges, (the shippers) ?"

The defendant argues that fair dealing and avoidance of multiple suits require the railroad to look to the consignors. The position of the defendant appears to be that although the defendant which accepted the shipments is ordinarily liable for the freight charges, nevertheless the liability has

here been shifted, or discharged, or delayed, not however by way of estoppel.

The cases cited by the defendant do not, in our view, call for this conclusion. *Western Ry. of Alabama* v. *Collins*, 201 Ala. 455, 78 So. 833, and *Yazoo & M. V. R. Co.* v. *Zemurray*, 238 F. 789 (CCA 5th Cir.), both actions against consignors, were decided prior to *Fink* and must give way thereto. *St. Louis-San Francisco Ry. Co.* v. *Republic Box Co.*, 12 F. (2nd) 441, and *Louisville & Nashville R. R.* v. *Central Iron & Coal Co.*, 265 U. S. 59, involve the liability of the consignor or shipper and not, as here, the consignee. Indeed, the *Central Iron & Coal* case, as we read it, strengthens the position of the railroad. The court said, at p. 65:

> "The shipment being an interstate one, the freight rate was that stated in the tariff filed with the Interstate Commerce Commission. The amount of the freight charges legally payable was determined by applying this tariff rate to the actual weight. Thus, they were fixed by law. No contract of the carrier could reduce the amount legally payable; or release from liability a shipper who had assumed an obligation to pay the charges. Nor could any act or omission of the carrier (except the running of the statute of limitations) estop or preclude it from enforcing payment of the full amount by a person liable therefor."

and also at p. 70:

> "For, under the rule of the *Fink Case,* if a shipment is accepted, the consignee becomes liable, as a matter of law, for the full amount of the freight charges, whether they are demanded at the time of delivery, or not until later. His liability satisfies the requirements of the Interstate Commerce Act."

In *Davis* v. *Akron Feed & Milling Co.*, 296 F. 675 (CCA 6th Cir.), the consignee at Akron was informed that all charges for freight from Kansas City to Chicago had been

paid. The court held the consignee not liable. It distinguished the case from the general rule, which it stated in these words, at p. 677:

> "The law is well settled that representations or claims made by the carrier as to the correct amount of freight to be charged will not relieve a consignee from the payment of the scheduled rate, for the reason that a shipper or consignee has equal opportunity with a carrier to know the published rate, and he is conclusively presumed to have such knowledge."

In *American Express Co.* v. *Sweeney*, 283 F. 691 (D. Mass.), the consignee was held liable for an undercharge based on rate but not on distance. In *Griffin Grocery Co.* v. *Pennsylvania RR Co.*, 93 Ga. App. 546, 92 S. E. (2nd) 254, the court expressly distinguished the undercharge cases in an action involving a representation to consignee that freight had been prepaid. *Houston & T. C. R. Co.* v. *Lee County Produce Co.*, 14 F. (2nd) 145 (S. D. Tex.), involved liability of the consignor after diversion of shipment by the purchaser.

The defendant seeks by analogy to the consignor cases to relieve itself from liability as the consignee accepting delivery of the freight. In our view the analogy is not apt. Under *Fink, supra,* the liability of the consignee is fixed without regard for liability or non-liability of the consignor.

Further, this is not a case of primary and secondary liability. In other words, the plaintiff is not here seeking recovery against a party who is only secondarily liable. In *Boston and Maine R. R.* v. *Hannaford Bros., et al., supra,* it was plainly held that both the consignor and the accepting consignee were independently and primarily liable to the railroad, whatever their relationship might be to each other.

The second point made by the defendant is that the railroad is estopped to recover the undercharges. This issue,

in our opinion, has been settled adversely to the defendant by the Supreme Court in the *Fink* and *Central Iron & Coal Co.* cases, *supra*.

In our view of the Federal law, the evidence relating to the contractual relationships between the defendant and third parties and evidence of payments by the defendant to third parties was not admissible.

The defendant, which accepted the shipments, became liable for the proper freight charges, and no arrangement with the consignors or shippers could avoid the liability. As we have noted, there was no avoidance of liability in this instance through compliance with Section 3 (3) of the Interstate Commerce Act.

On this view of the case, in accordance with the agreement of the parties, the plaintiff recovers for the first shipment $289.80 with interest from December 21, 1958, and for the second shipment $532.35 with interest from December 26, 1959.

The entry will be

*Judgment for the plaintiff in accordance with this opinion.*