**WHEATON VAN LINES, INC.**

v.

**Hayes GAHAGAN.**

Supreme Judicial Court of Maine.

Submitted on Briefs Oct. 2, 1995.

Decided Jan. 2, 1996.

Rita M. Farry, Greenberg & Greenberg, Portland, for Plaintiff.

Louis B. Butterfield, Olafsen & Butterfield, Portland, for Defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, RUDMAN, DANA, and LIPEZ, JJ.

RUDMAN, Justice.

Wheaton Van Lines appeals from the judgment entered in the Superior Court (Cumberland County, *Saufley, J.*) affirming the judgment of the District Court (Bridgton, *Donovan, J.*) in favor of Hayes Gahagan. Wheaton Van Lines argues the District Court erred as a matter of law in holding that Gahagan's lack of explicit designation as consignee on the bill of lading shielded him from liability for a $13,756.89 freight bill. We agree and vacate the judgment.

In 1990 Gahagan sold his company, a Maine corporation operated by Gahagan from his Indianapolis home, to a Kentucky-based firm, which then changed its own company name to U.S. Development Corporation, the name of the Gahagan firm. By contractual agreement Gahagan became an employee of the new entity. Some months after the transaction the company determined to move Gahagan and his home-based office to Sebago, Maine. By Gahagan's signature as president, U.S. Development Corporation authorized Wheaton Van Lines to bill U.S. Development Corporation for Gahagan's moving expenses.

Gahagan arranged to have Wheaton Van Lines pick up his household goods and home office equipment in Indianapolis and deliver them to Maine. The bill of lading was signed by Gahagan's wife when Wheaton picked up the shipment at the Gahagan home in Indianapolis. The bill of lading showed Hayes Gahagan's name in parentheses following the name of the U.S. Development Corporation on the line designating "Shipper" and again on the line designating "Consignee." The carrier picked up the goods from the Gahagans' home in Indianapolis and delivered them to the Gahagans' new home in Maine, where Gahagan's wife accepted delivery.

■  The bill of lading directed that freight charges be billed to the U.S. Development Corporation. When the corporation, which had fallen into financial difficulty, was unable to pay, Wheaton Van Lines billed Gahagan personally for the move. Gahagan refused to pay, and Wheaton filed the present action to compel payment. Following the trial, the District Court entered judgment for Gahagan. Wheaton Van Lines moved for addi-

tional findings pursuant to M.R.Civ.P. 52(b). The District Court granted Wheaton's motion over Gahagan's objection. Wheaton appealed from the judgment as amended by the additional findings. The Superior Court affirmed the judgment. Wheaton appealed. When, as here, the Superior Court acts as an intermediate appellate court, we review the initial adjudication of the trial court and not the decision of the Superior Court. *City of Portland v. Gemini Concerts, Inc.,* 481 A.2d 180, 181 (Me.1984).

## I

■ Gahagan argues initially that the record from the District Court is insufficient to permit review because it contains no transcript of the proceedings. The District

Court's findings of fact, however, are undisputed.[1] The question of Gahagan's liability based on the undisputed facts is a question of law. We review the District Court's decision *de novo* for error in the court's legal conclusions based on its undisputed findings. For purposes of *de novo* review of a conclusion of law based on undisputed findings, no transcript of the trial court proceedings is required.

## II

■ Gahagan's liability for the freight costs incurred in shipment of his goods turns as a matter of law on whether he is a "consignee" for purposes of the Interstate Commerce Act.[2] Pursuant to the Interstate

1. The District Court found:
   1. The Defendant through his wife accepted the delivery of the goods transported by the Plaintiff.
   2. The Defendant and his wife were the beneficial owners of the household goods transported by the Plaintiff.
   3. The Defendant did not notify the Plaintiff that he was accepting delivery of any of the goods solely as agent of U.S. Development Corporation.
   4. The Defendant did not notify the Plaintiff that he had no beneficial ownership interest in the office equipment transported by the Plaintiff.

2. The Interstate Commerce Act reads in pertinent part:
   49 U.S.C. § 10743 (Pamph.1995).
   Payment of rates.
   (a) Except as provided in subsection (b) of this section, a common carrier (except a pipeline or sleeping car carrier) providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission under this subtitle shall give up possession at destination of property transported by it only when payment for the transportation or service is made.
   (b)(1) Under regulations of the Commission governing the payment for transportation and service and preventing discrimination, those carriers may give up possession at destination of property transported by them before payment for the transportation of service. The regulations of the Commission may provide for weekly or monthly payment for transportation provided by motor common carriers and for periodic payment for transportation provided by water common carriers.
   (b)(2) Such a carrier (including a motor common carrier being used by a household goods freight forwarder) may extend credit for transporting property for the United States

Government, a State, a territory or possession of the United States, or a political subdivision of any of them.
49 U.S.C. § 10744 (Pamph.1995).
Liability for payment of rates.
   (a)(1) Liability for payment of rates for transportation for a shipment of property by a shipper or consignor to a consignee other than the shipper or consignor, is determined under this subsection when the transportation is provided by a rail, motor, or water common carrier under this subtitle. When the shipper or consignor instructs the carrier transporting the property to deliver it to a consignee that is an agent only, not having beneficial title to the property, the consignee is liable for rates billed at the time of delivery for which the consignee is otherwise liable, but not for additional rates that may be found to be due after delivery if the consignee gives written notice to the delivering carrier before delivery of the property—
      (A) of the agency and absence of beneficial title; and
      (B) of the name and address of the beneficial owner of the property if it is reconsigned or diverted to a place other than the place specified in the original bill of lading.
   . . . .
   (b) Liability for payment of rates for transportation for a shipment of property by a shipper or consignor, named in the bill of lading as consignee, is determined under this subsection when the transportation is provided by a rail or express carrier under this subtitle. When the shipper or consignor gives written notice, before delivery of the property, to the line-haul carrier that is to make ultimate delivery—
      (1) to deliver the property to another party identified by the shipper or consignor as the beneficial owner of the property; and
      (2) that delivery is to be made to that party on payment of all applicable transportation rates;

Commerce Act, a consignee makes himself *prima facie* liable for transportation charges by accepting delivery of the freight. *Boston & Maine R.R. v. Hannaford Bros. Co.*, 144 Me. 306, 310, 68 A.2d 1, 4 (1949) (citing *Pittsburgh, Cincinnati, Chicago & St. Louis Ry. v. Fink*, 250 U.S. 577, 40 S.Ct. 27, 63 L.Ed. 1151 (1919)).

■ The bill of lading in this case listed U.S. Development Corporation as "consignee" and included Gahagan's name only in parentheses on the consignee line. A bill of lading, however, while *prima facie* evidence of facts recited therein, is not conclusive. *Ross v. Maine Central R.R.*, 114 Me. 287, 293, 96 A. 223 (1915). It is undisputed that the freight company was directed to deliver the goods to Gahagan, that it did so, and that he accepted their delivery.

■ The Interstate Commerce Act itself offers no express definition of "consignee." 3 Sorkin, *Goods in Transit* § 22.03 at 79 (Supp.1991) (citing *Power Transmission Equip. Corp. v. Beloit Corp.*, 55 Wis.2d 540, 201 N.W.2d 13, 15–16 (1972)). When no statutory definition exists, we construe terms of a statute in context and to implement legislative intent. *Lakes Environmental Ass'n v. Town of Naples*, 486 A.2d 91, 95 (Me.1984).

■ The intent of Congress in enacting the rate liability provisions of the Interstate Commerce Act was to curb preferential and discriminatory freight charges by requiring prompt and uniform payment of full tariff rates and charges.

The purpose of the Act to Regulate Interstate Commerce, frequently declared in the decisions of this court, was to provide one rate for all shipments of like character, and to make the only legal charge for the transportation of goods in interstate commerce, the rate duly filed with the [Interstate Commerce] Commission. In this way discrimination is avoided, and all receive like treatment, which it is the main purpose of the act to secure.

*Pittsburgh, Cincinnati, Chicago & St. Louis R.R. v. Fink*, 250 U.S. at 581, 40 S.Ct. at 27–28. Congressional interest in eliminating the favoritism that historically plagued the freight industry led to the imposition of a positive duty on common freight carriers in interstate commerce to recover charges extended on credit. *S. Pac. Transp. Co. v. Commercial Metals Co.*, 456 U.S. 336, 343, 102 S.Ct. 1815, 1820, 72 L.Ed.2d 114 (1982). The Supreme Court's construction of the Act distinguishes a shipping agreement from an ordinary contract. The payment of interstate freight rates is not a question of whether the shipper protected his interests adequately in the agreement. It is, rather, a function of Congressional intent that some interested party must pay the freight in every shipping agreement. If a shipper/consignor does not pay, his consignee must.[3]

that party is liable for the rates billed at the time of delivery and for additional rates that may be found to be due after delivery if that party does not pay the rates required to be paid under clause (2) of this subsection on delivery. However, if the party gives written notice to the delivering carrier before delivery that the party is not the beneficial owner of the property and gives the carrier the name and address of the beneficial owner, then the party is not liable for those additional rates. A shipper, consignor, or party to whom delivery is made that gives the delivering carrier erroneous information about the identity of the beneficial owner, is liable for the additional rates regardless of the bill of lading or contract under which the property was transported. This subsection does not apply to a prepaid shipment of property.

*n.b.* Title 49 U.S.C. §§ 10743–10744 (Pamph. 1995) codify the repealed Title 49 U.S.C. § 3(2) and § 323. In so recodifying the Interstate Commerce Act in 1978, Congress made clear that,

"Like other codifications undertaken to enact into positive law all titles of the United States Code, this bill makes no substantive change in the law.... [T]he statute is intended to remain substantively unchanged." H.R.Rep. No. 1395, 95th Cong., 2d Sess 9 (1978), *reprinted in* [1978] U.S.Code Cong. & Ad.News 3009, 3018.

3. *See, e.g., Pittsburgh, Cincinnati, Chicago & St. Louis Ry. v. Fink*, 250 U.S. 577, 40 S.Ct. 27, 63 L.Ed. 1151 (1919) (pursuant to the Interstate Commerce Act, consignee who accepted shipment liable as a matter of law for the full amount of freight charges, whether they are demanded at the time of delivery or later); *Louisville & Nashville Ry. v. Central Iron & Coal Co.*, 265 U.S. 59, 44 S.Ct. 441, 68 L.Ed. 900 (1924) (pursuant to the Interstate Commerce Act, where consignor accepted no contractual primary obligation to pay freight charges, consignee may be liable); *Maine Central R.R. v. Fred I. Merrill, Inc.*, 157 Me. 484, 174 A.2d 112 (1961) (consignee liable to carrier for underpayment deficiency in freight

In order to effect the purpose of the Interstate Commerce Act to insure prompt and uniform payment of freight rates, an owner of shipped goods who is identified to the carrier as the intended recipient of the goods, who does in fact accept the goods not as an agent but for himself, and who in every way but designation on a bill of lading acts as consignee must be treated as consignee. This construction of consignee implements Congressional intent and is consistent with the Interstate Commerce Act's provision that a "beneficial owner" of goods is liable for freight rates, upon delivery of the goods, in circumstances where a designated consignee reconsigns delivery to the "beneficial owner." 49 U.S.C. § 10744 (Pamph.1995).

For purposes of the Interstate Commerce Act, Hayes Gahagan is a consignee of the shipment carried for him by Wheaton Van Lines. As consignee, Gahagan is primarily and independently liable for the unpaid freight charges.

The entry is:

Judgment vacated. Remanded to the Superior Court with instructions to remand to the District Court for a determination of the amount due and for entry of a judgment in favor of Wheaton Van Lines.

All concurring.

charges although consignee earlier paid consign-

or all freight charges identified at the time).